2007 ND 53

**In the Matter of the ESTATE OF Trygve R. STAVE, Deceased**

**Lavina Stave, Appellant**

v.

**Norman Mell, Personal Representative of the Estate of Trygve R. Stave, Appellee.**

**No. 20060189.**

Supreme Court of North Dakota.

April 10, 2007.

Michael Ward, Eaton, Van de Streek & Ward, Minot, N.D., for appellant.

Wade G. Enget (argued), Schulte & Enget, Stanley, N.D., and Michel W. Stefonowicz (appeared), Crosby, N.D., for appellee.

MARING, Justice.

[¶ 1] Lavina Stave appeals from a district court order granting a motion for judgment as a matter of law by the personal representative of the estate of her deceased husband, Trygve Stave, and dismissing her action against the estate. Because we conclude Lavina Stave failed to present any evidence on one of the required elements of her claim of undue influence, we affirm.

I

[¶ 2] Trygve and Lavina Stave were married on January 29, 1945, and had two children, Terry Stave in 1945 and Thomas Stave in 1948. In the 1990's, Trygve Stave developed bladder cancer, and in Septem-

ber 2001, he was diagnosed with cancer that had penetrated his bladder wall and was spreading throughout his body. On September 28, 2001, Trygve Stave executed a "last will and testament," which "intentionally omitted" his wife from receiving any share of his estate and which distributed 40 percent of his estate to Thomas Stave, 15 percent to Terry Stave, and 15 percent to each of Trygve Stave's three grandchildren. Trygve Stave died on April 25, 2002.

[¶ 3] In May 2002, Lavina Stave applied for informal probate of Trygve Stave's will, requesting that she be named as the personal representative. Norman Mell, who was named as personal representative by the will, was subsequently appointed as the personal representative of the estate. Lavina Stave then commenced this action against the estate, alleging the will was the product of fraud or undue influence. Although not at issue in this case, Lavina Stave has also filed a claim seeking her elective share of the augmented estate under state law.

[¶ 4] The district court dismissed the fraud claim before trial, and in May 2006, the undue influence claim was tried to a jury. During trial, testimony established that Trygve and Lavina Stave spent most of their life working on their farm and accumulating assets. Both Terry Stave and Thomas Stave worked on their parents' farm while growing up and during their adult life. In 1984, Thomas Stave left and moved to Georgia to pursue his own business. The evidence indicates Thomas Stave did not spend much time in North Dakota during the last approximately 15 years of Trygve Stave's life, while Terry Stave continued to live in North Dakota and farm with Trygve and Lavina until Trygve's death.

[¶ 5] Barbara Stave, Terry's wife, testified that Thomas Stave returned to the area in 2001, visiting his parents and also attending a family gathering. Barbara Stave testified that Terry and Trygve were "very close" until 2001, and everything changed after Thomas returned. Terry Stave testified that he witnessed a conversation between Trygve and Thomas "one day" in 2001, during which Trygve and Thomas were talking about Trygve's estate. Terry Stave testified that when he approached Trygve and Thomas, they switched subjects. Further, Terry's son testified that Thomas started coming around in 2001, but he did not know what Thomas had discussed with Trygve.

[¶ 6] Dr. Stephen Podrygula, a clinical psychologist, testified that in his opinion Trygve Stave was "very susceptible" and at "a high risk of susceptibility" to undue influence, but did not express an opinion as to whether that influence was actually exercised. Dr. Podrygula did not testify whether undue influence was exerted at the time of the execution of Trygve Stave's will. Lavina Stave testified that Trygve was not well during the last year of his life, and Barbara Stave testified that Trygve appeared to be confused, could not make decisions, and had trouble understanding things in 2001. Terry Stave testified that in 2001 Trygve was having problems, was not feeling quite right, and was often mad and depressed. Terry's son also testified that in 2001, Trygve's health was failing and that he seemed confused.

[¶ 7] Lavina Stave testified that upon the reading of Trygve Stave's will, she was surprised and upset, in part, because she believed the distribution should have been equal between Terry Stave and Thomas Stave. Barbara Stave testified that Trygve had told her the distribution of property would be larger for Terry Stave than for Thomas Stave, because Terry had always been the one doing the farming. Terry Stave's son testified that Trygve had

told him that the estate would go to Lavina Stave and then be split evenly between Terry Stave and Thomas Stave. Terry Stave testified that Trygve had told him that all of the land was going to be given to Terry Stave, with Terry Stave having to "pay off" Thomas Stave.

[¶ 8] After Lavina Stave finished presenting evidence in her case-in-chief, the personal representative moved for a judgment as a matter of law under N.D.R.Civ.P. 50. The district court found that the evidence presented, viewed in the light most favorable to Lavina Stave, could support a finding that Trygve Stave may have been susceptible to undue influence, but that Lavina Stave had only shown that Thomas Stave had a conversation with Trygve about the estate sometime before Trygve's will was executed. The court found that no evidence demonstrated Thomas Stave was disposed to exercise undue influence over Trygve Stave and, further, no evidence had shown the will was the product of undue influence exerted by Thomas Stave.

[¶ 9] The district court granted the personal representative's motion for a judgment as a matter of law under N.D.R.Civ.P. 50, and dismissed Lavina Stave's action to invalidate the will on the ground of undue influence. Lavina Stave appeals.

## II

[¶ 10] Lavina Stave argues the district court erred in granting judgment as a matter of law. She claims she presented sufficient credible evidence to establish a case of undue influence.

[¶ 11] The district court's decision on whether to grant or deny a motion for judgment as a matter of law under N.D.R.Civ.P. 50 is based upon "whether the evidence, when viewed in the light most favorable to the party against whom

the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion." *Dahl v. Messmer*, 2006 ND 166, ¶ 14, 719 N.W.2d 341 (quoting *Symington v. Mayo*, 1999 ND 48, ¶ 4, 590 N.W.2d 450). On appeal, the district court's decision on a motion for judgment as a matter of law is fully reviewable. *Dahl*, at ¶ 14.

[¶ 12] "We have defined undue influence in the context of a will contest as the substitution of the purpose and intent of one exercising influence for the purpose and intent of the testator." *Estate of Howser*, 2002 ND 33, ¶ 9, 639 N.W.2d 485; *Estate of Robinson*, 2000 ND 90, ¶ 10, 609 N.W.2d 745. In a proceeding to contest a will, four elements must be proven to establish undue influence: "1) a testator subject to undue influence; 2) the existence of the opportunity to exercise undue influence; 3) a disposition to exercise undue influence; and 4) a result that appears to be the effect of undue influence." *Estate of Howser*, at ¶ 9. Whether undue influence exists is a question of fact, which is ordinarily established by circumstantial evidence. *Estate of Robinson*, at ¶¶ 10–11.

[¶ 13] This Court has explained that undue influence must be proven by the person contesting the will and that mere suspicion is not enough. *Estate of Ostby*, 479 N.W.2d 866, 871 (N.D.1992). "For the issue of undue influence to be submitted to a jury, the evidence must be sufficient with regard to each essential element of the claim and the evidence must also create more than just a mere suspicion of undue activity." *Estate of Dion*, 2001 ND 53, ¶ 34, 623 N.W.2d 720 (citing *Perry v. Reinke*, 1997 ND 213, ¶ 13, 570 N.W.2d 224).

[¶ 14] Here, the dispositive issue is whether there was evidence presented

to the jury to raise a factual issue about Thomas Stave's disposition to exercise undue influence over Trygve Stave. Lavina Stave argues circumstantial evidence supports Thomas's disposition to exercise undue influence.

[¶ 15] There is testimony in the record that Thomas Stave returned to North Dakota to spend time with his father after living out of state for an extended period and Thomas had not seen his father much during the last 15 years of Trygve Stave's life. Lavina Stave testified Thomas Stave was "greedy." However, there is evidence about only one conversation between Thomas Stave and Trygve Stave regarding the estate, which purportedly occurred sometime in 2001. Terry Stave testified that he observed Thomas and his father discussing the estate, but that "[a]s soon as [he] got there, they switched subjects." There is no evidence Thomas Stave was in North Dakota at the time the will was executed in September 2001, or that he was involved in the execution of the will.

[¶ 16] We conclude Lavina Stave has failed to demonstrate a disposition on the part of Thomas Stave to exercise undue influence. There was no evidence presented that Thomas Stave was involved in the planning and execution of Trygve Stave's will, and Lavina Stave only established one conversation between Thomas and Trygve about the estate, but nothing as to the content of that single conversation. While Thomas Stave may well be a beneficiary of the will who received a disproportionate amount of the estate, there is simply no evidence of Thomas's "active participation . . . in securing the preparation of, or a change in, [the] will." *See Estate of Robinson,* 2000 ND 90, ¶ 16, 609 N.W.2d 745.

[¶ 17] Viewing the evidence presented at trial in the light most favorable to Lavina Stave, we conclude the evidence about Thomas Stave's disposition to exercise un-

due influence is such that it could lead to one conclusion about which there can be no difference of opinion. We therefore hold the district court did not err in granting the personal representative's motion for a judgment as a matter of law under N.D.R.Civ.P. 50.

III

[¶ 18] Lavina Stave argues that there should be a presumption of undue influence in this case, considering the relationship of "personal confidence" between Thomas Stave and Trygve Stave, as father and son. We have consistently refused to apply the presumption of undue influence, found in N.D.C.C. § 59–01–16, to will contests. *See Estate of Howser,* 2002 ND 33, ¶ 7, 639 N.W.2d 485; *Estate of Wenzel–Mosset v. Nickels,* 1998 ND 16, ¶ 23, 575 N.W.2d 425; *Estate of Mickelson,* 477 N.W.2d 247, 250 (N.D.1991). We have specifically held "[t]here is no need for a prescription of undue influence in will contest cases, because the criteria for such are well set out in case law." *Estate of Wenzel–Mosset,* at ¶ 23. We conclude this argument is without merit.

IV

[¶ 19] Lavina Stave argues the district court erred by admitting Trygve Stave's medical records only for the limited purpose of providing the basis of Dr. Podrygula's expert opinion testimony. The district court has broad discretion in deciding whether to admit or exclude evidence. *See Nesvig v. Nesvig,* 2006 ND 66, ¶ 30, 712 N.W.2d 299. Based upon our review of the record, we cannot say the district court abused its discretion regarding those records.

V

[¶ 20] The district court order is affirmed.

[¶ 21] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM, and DANIEL J. CROTHERS, JJ., concur.