2014 ND 7

**Jeff TROSEN, Plaintiff and Appellant**

v.

**Shirley TROSEN, individually, and in her capacity as Trustee of the Trosen Family Trust, dated August 23, 2002,**

and Brent Trosen, Defendants and Appellees.

No. 20130034.

Supreme Court of North Dakota.

Jan. 14, 2014.

DeWayne A. Johnston, Grand Forks, ND, for plaintiff and appellant; submitted on brief.

Michael J. Morley, Grand Forks, ND, for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Jeff Trosen appeals from a district court judgment dismissing his legal and equitable claims against Shirley Trosen and Brent Trosen. We affirm the judgment, concluding the district court did not err by granting Shirley Trosen and Brent Trosen's motion for judgment as a matter of law and dismissing Jeff Trosen's legal claims, and the district court reached the right result with respect to Jeff Trosen's equitable claims, but for the wrong reason.

I

[¶ 2] Shirley Trosen owned farmland and leased various tracts separately to her sons, Jeff Trosen and Brent Trosen. In 2008, Shirley Trosen and Jeff Trosen signed a "Farm Lease" granting Jeff Trosen use of certain described land from January 2008 through December 2010. The written document did not specify the amount of rent under the lease. Testimony at trial, however, demonstrated that the Trosen family members paid $65 per tillable acre under their various leases, and the amount of tillable acres under each lease was calculated annually by the county Farm Service Agency ("FSA") office based upon the number of acres going into or coming out of the Conservation Reserve Program ("CRP") on the relevant tract for that growing season.

[¶ 3] In February 2010, Jeff Trosen was unable to pay the annual rent on the land when it came due. Shirley Trosen and Brent Trosen agreed Brent Trosen would farm the land during the 2010 crop year, and FSA was advised to change its listing of the farm operator on the land from Jeff Trosen to Brent Trosen. In September 2010, Shirley Trosen and Brent Trosen signed an agreement purportedly leasing the disputed land to Brent Trosen through 2015.

[¶ 4] On January 1, 2011, Jeff Trosen met with Shirley Trosen and indicated he wished to resume farming the land he previously leased from her. The parties re-signed their 2008 "Farm Lease," with a handwritten notation, initialed by the parties, extending the term of the lease for three years through December 2013. That week, Jeff Trosen tendered to Shirley Trosen a check for $28,522, dated "Jan 2011." The memo line of the check indicated it was for "2011 farm land."

[¶ 5] Shirley Trosen contacted FSA and advised them to list Jeff Trosen as the operator on the described property, rather than Brent Trosen. Jeff Trosen then went to the FSA office to find out how many tillable acres were available on those tracts of land for the 2011 growing season. Upon being advised 438.8 tillable acres were available, Jeff Trosen calculated the annual rent which would be due under the lease and made a notation on the farm lease agreement indicating there were 438.8 tillable acres and an annual payment due of $28,522. On January 6, 2011, FSA sent a letter to Jeff Trosen advising him he had been listed as the operator of the farm unit and the prior operator had been removed.

[¶ 6] When Brent Trosen learned of the January 1, 2011 lease between Shirley Trosen and Jeff Trosen, he advised Shirley Trosen that he held a lease on that land for the 2011–2015 growing seasons. Shirley Trosen contacted FSA and advised them that Brent Trosen should be listed as the farm operator on the land for 2011. On January 10, 2011, FSA sent a letter to Jeff Trosen informing him he had been removed as the operator of the farm unit and a new operator had been added. Shirley Trosen did not cash the check given to her by Jeff Trosen, and she eventually returned it.

[¶ 7] Jeff Trosen sued Shirley Trosen and Brent Trosen for breach of contract, interference with contractual relations, specific performance, declaratory relief, and injunctive relief. The case was bifurcated, with the breach of contract and interference with contractual relations claims to be tried to a jury and the remaining, equitable claims to be tried to the court after the jury trial. At the conclusion of the evidence in the five-day jury trial, but before the case was submitted to the jury, both sides moved for judgment as a matter of law under N.D.R.Civ.P. 50. The district court determined the January 1, 2011 lease agreement between Shirley Trosen and Jeff Trosen was barred by the statute of frauds and therefore no evidentiary basis existed to support the breach of contract or interference with contractual relations claims. The court therefore granted Shirley Trosen and Brent Trosen's motion for judgment as a matter of law on the legal claims and dismissed the jury.

[¶ 8] The parties stipulated that the testimony and evidence presented to the jury would be the basis for the district court's determination of the equitable issues. In a subsequent order, the district court rejected Jeff Trosen's remaining, equitable claims. Judgment was then entered dismissing all of Jeff Trosen's legal and equitable claims against Shirley Trosen and Brent Trosen.

II

[¶ 9] Jeff Trosen argues the district court erred in granting Shirley Trosen and Brent Trosen's motion for judgment as a matter of law and in dismissing Jeff Trosen's legal claims. "A district court's decision on a motion under N.D.R.Civ.P. 50 to grant or deny judgment as a matter of law is based upon 'whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion.'" *Forsman v. Blues, Brews and Bar-B-Ques, Inc.*, 2012 ND 184, ¶ 8, 820 N.W.2d 748 (quoting *In re Estate of Stave*, 2007 ND 53, ¶ 11, 729 N.W.2d 706). "On appeal, [the] district court's decision on a motion for judgment as a matter of law [under Rule 50] is fully reviewable." *Forsman*, at ¶ 8 (quoting *In re Estate of Stave*, at ¶ 11); *Martin v. Trinity Hosp.*, 2008 ND 176, ¶ 28, 755 N.W.2d 900.

[¶ 10] In granting the motion for judgment as a matter of law, the district court correctly noted that the existence of a valid contract was an essential element of Jeff Trosen's claims for breach of contract and interference with contractual relations. *See, e.g., Thimjon Farms P'ship v. First Int'l Bank & Trust*, 2013 ND 160, ¶ 11, 837 N.W.2d 327; *Godon v. Kindred Pub. Sch. Dist.*, 2011 ND 121, ¶ 13, 798 N.W.2d 664; *Van Sickle v. Hallmark & Assocs., Inc.*, 2008 ND 12, ¶ 24, 744 N.W.2d 532. The court determined that, on the undisputed evidence presented to the jury, the January 1, 2011 lease was invalid under the statute of frauds and no evidentiary basis

existed to submit Jeff Trosen's claims to the jury:

> The Court finds that the January 1, 2011 lease does not meet the Statute of Frauds and therefore, is not a valid contract. Without a valid contract, there is no evidentiary basis for Jeff Trosen's claim against Shirley Trosen for breach of contract and Jeff Trosen's claim against Brent Trosen for intentional interference with contract. The Court makes the finding that the January 1, 2011 lease is not a valid contract based on the undisputed evidence before the Court and the jury in this case.

Jeff Trosen contends the court erred in holding the lease was barred by the statute of frauds.

[¶ 11] Section 9–06–04, N.D.C.C., provides in pertinent part:

> The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by the party's agent:
>
> . . . .
>
> 3. An agreement for the leasing for a longer period than one year, or for the sale, of real property, or of an interest therein.

The January 1, 2011 lease agreement was for three years and falls squarely within the prohibition of N.D.C.C. § 9–06–04. Therefore, the lease is invalid unless it is memorialized in a writing signed by Shirley Trosen, the party to be charged, or by her agent.

[¶ 12] Although Shirley Trosen signed the written document entitled "Farm Lease," that document does not satisfy the statute of frauds. To constitute a sufficient memorandum to take a contract out of the statute of frauds, a writing "must contain all the essential or material conditions and terms of the contract,"

*Stout v. Fisher Indus., Inc.*, 1999 ND 218, ¶ 10, 603 N.W.2d 52 (citation omitted), including the identity of the parties, the subject matter of the agreement, and the express consideration. *Rohrich v. Kaplan*, 248 N.W.2d 801, 803 (N.D.1976) (citing *Johnson v. Auran*, 214 N.W.2d 641, 649–50 (N.D.1974)). The undisputed evidence in this case disclosed the written lease signed by Shirley Trosen on January 1, 2011 did not contain any provision expressing the consideration for the lease. Jeff Trosen concedes he added the notation "$28,522" on the written lease several days later, and the lease makes no mention of the alleged rental price of $65 per acre.

[¶ 13] Jeff Trosen contends the district court erred when failing to recognize the exception to the parol evidence rule allowing evidence outside the four corners of the agreement to explain ambiguous terms. Jeff Trosen cites numerous cases indicating a contract can be part written and part oral, and parol evidence may be admitted and considered to clarify ambiguities. He argues the missing terms in the written lease agreement therefore may be "easily explained by an examination of the circumstances under which the lease was made, and the matter to which it relates."

[¶ 14] Jeff Trosen failed to recognize the crucial difference between the use of parol evidence to explain ambiguous terms in a written agreement and the lack of essential terms in a writing evidencing a contract which falls within the statute of frauds. This Court consistently has held that, to satisfy the statute of frauds, the writing must contain all of the essential or material terms and conditions of the agreement. *See, e.g., Stout*, 1999 ND 218, ¶ 10, 603 N.W.2d 52. To satisfy the statute of frauds, the essential terms of the agreement must be in writing, and the contract cannot rest partly in writing and partly in parol. *Johnson*, 214 N.W.2d at

653. Parol evidence may not be used to supply a missing essential term of the agreement and thereby remove the agreement from the statute of frauds. *Zitzow v. Diederich,* 337 N.W.2d 799, 802 (N.D. 1983); *Johnson,* at 653.

[¶ 15] To satisfy the statute of frauds, the written lease was required to include the express consideration for the lease. No essential term could be supplied by parol evidence. The written "Farm Lease" signed by Shirley Trosen on January 1, 2011 did not state the consideration to be paid by Jeff Trosen for the lease and, thus, did not satisfy the statute of frauds.

■ [¶ 16] Jeff Trosen contends that, even if the January 1, 2011 "Farm Lease" did not satisfy the statute of frauds, the lease was taken out of the statute of frauds by the parties' partial performance of the lease. Jeff Trosen contends both he and Shirley Trosen partially performed under the lease, he by tendering a check for the first year's rent and she by contacting the FSA office to change the farm operator from Brent Trosen to Jeff Trosen. Jeff Trosen contends the parties' partial performance was consistent only with existence of the lease and was sufficient to remove the lease from the statute of frauds, and the court therefore erred in granting the Rule 50 motion for judgment as a matter of law dismissing the breach of contract and interference with contractual relations claims.

■ [¶ 17] As is more fully discussed below, the partial performance doctrine is based purely in equity, premised upon principles of equitable estoppel, and is intended to prevent a party from using the statute of frauds to perpetrate a fraud. The doctrine does not apply in an action at law for damages:

> The doctrine of part performance is an equitable doctrine based solely on the

jurisdiction to prevent and to relieve against fraud, and resting on estoppel. At law, no amount of part performance, except complete and full performance by at least one party thereto, will remove the case from the operation of the statute and permit a recovery based on the contract, except where the rule is changed by statute. The partial performance exception to the statute of frauds is inapplicable in a suit where only money damages are sought.

37 C.J.S. *Frauds, Statute of* § 188 (2008) (footnotes omitted); *see also* 4 Caroline N. Brown, *Corbin on Contracts* § 18.3 (rev. ed.1997) (" 'Part performance' ... does not make a judgment for damages available."); 10 Lord, *supra,* § 28.4 ("Because the part-performance rule is an equitable doctrine, it has generally been held that the doctrine has no application when the only relief sought by the plaintiff is money damages."); 73 Am.Jur.2d *Statute of Frauds, supra,* at § 296 ("[T]he doctrine of part performance is purely an equitable doctrine, unrecognized at law, and accordingly will not sustain an action at law based on a contract within the Statute of Frauds," and "[t]hus, the part performance exception to the Statute of Frauds is inapplicable in a suit where only money damages are sought.").

[¶ 18] The claims dismissed by the district court's grant of Shirley Trosen and Brent Trosen's Rule 50 motion—breach of contract and interference with contractual relations—were actions at law seeking money damages. Accordingly, the part performance doctrine was inapplicable and did not provide a basis for those claims.

[¶ 19] We therefore affirm the district court's dismissal of Jeff Trosen's breach of contract and interference with contractual relations claims.

## III

[¶ 20] Jeff Trosen also appeals the district court's dismissal of his equitable claims against Shirley Trosen and Brent Trosen. Specifically, he argues part performance of the agreement between he and Shirley Trosen removed the agreement from the statute of frauds. While Jeff Trosen characterizes this argument as an action at law, part performance is an equitable argument pertaining to the district court's dismissal of his claims for equitable relief. Jeff Trosen's equitable claims were tried to the court via stipulated testimony and evidence, and our standard of review of a bench trial is clear:

> In an appeal from a bench trial, the trial court's findings of fact are reviewed under the clearly erroneous standard of N.D.R.Civ.P. 52(a) and its conclusions of law are fully reviewable. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. In a bench trial, the trial court is the determiner of credibility issues and we do not second-guess the trial court on its credibility determinations.

*Niles v. Eldridge*, 2013 ND 52, ¶ 6, 828 N.W.2d 521 (quoting *Fladeland v. Gudbranson*, 2004 ND 118, ¶ 7, 681 N.W.2d 431) (citations and quotation marks omitted).

## A

[¶ 21] We have previously held that part performance of an agreement or contract for the leasing of property for longer than a one-year period may bar the assertion of the statute of frauds. *Cooke v. Blood Sys., Inc.*, 320 N.W.2d 124, 127 (N.D.1982); *see also Moen v. Thomas*, 2001 ND 95, ¶ 16, 627 N.W.2d 146; *Buettner v. Nostdahl*, 204 N.W.2d 187, 190

(N.D.1973) *overruled on other grounds* by *Shark v. Thompson*, 373 N.W.2d 859, 867 (N.D.1985); *see also* 73 Am.Jur.2d *Statute of Frauds* § 364 (2012). The part performance doctrine is based in equity, premised upon principles of equitable estoppel, and is intended to prevent a party from using the statute of frauds to perpetrate a fraud. *See* 10 Richard A. Lord, *Williston on Contracts* § 28.2 (4th ed.2011); 73 Am.Jur.2d *Statute of Frauds* §§ 292, 295–96 (2012). Under this doctrine, "[t]he Statute of Frauds defense can be avoided if there has been part performance of an alleged oral contract." 73 Am. Jur.2d *Statute of Frauds* § 289 (2012). Successful application of the doctrine to an oral contract has the effect "of taking [the] contract from the operation of the Statute of Frauds so that a court of equity may decree its specific performance or grant other equitable relief." *Id.*

[¶ 22] "The doctrine of part performance can be asserted to secure specific performance of a contract for which there is no memorandum in writing, as required by the Statute of Frauds, only where the circumstances of the case meet the general prerequisites to equitable relief." 73 Am. Jur.2d *Statute of Frauds* § 293 (2012). A party asserting that part performance has removed an unwritten agreement from the statute of frauds must prove that a contract existed. *Anderson v. Mooney*, 279 N.W.2d 423, 429 (N.D.1979). "The contract must be fully made and complete in every respect except for the writing required by the statute in order to be enforceable on the ground of part performance." 73 Am.Jur.2d *Statute of Frauds* § 293.

[¶ 23] In its findings of fact, conclusions of law, and order for judgment, the district court found that the written lease did not indicate the consideration,

and the description of the land was incorrect. However, the court found that the disputed property consisted of 438.8 acres of farmland owned by Shirley Trosen and the Trosen Family Trust and was understood to be the property located at:

> Township 153 North, Range 53 West (Gilby Township)
>
> Section 27; E1/2 (less parcels previously conveyed) [261.7 acres]
>
> Township 152 North, Range 54 West (Hegton Township)
>
> Section 20: W1/2, less SW1/4 of SW1/4 [177.1 acres]

The court found that the lease contained the notation "total farm operation of farm 3564 21 Ave E Larimore N Dak 58251–all rents to Shirley Trosen (Duane–Shirley main farm)." The court found that both Shirley Trosen and Jeff Trosen testified the rent was understood to be $65 per acre, despite the written lease being silent, and at the time of the lease signing, Jeff Trosen gave Shirley Trosen a check for $28,522. These findings were not clearly erroneous. However, in reaching its conclusion that a complete contract did not exist, the district court relied only on the portions of the written lease that met the statute of frauds. In equitable analysis, a court looks to all elements of a contract, not merely those that meet the statute of frauds' writing requirement. On a review of the entire record, we conclude the requirements for formation of an oral contract were met: Jeff Trosen contracted with Shirley Trosen to rent the 438.8 acres of disputed property at $65 per acre for the farming seasons of 2011–2013.

### B

[¶ 24] In order to succeed on a claim of part performance, the claimant must show that the alleged part performance is consistent only with the existence of the alleged oral contract. *Rickert v. Dakota Sanitation Plus, Inc.*, 2012 ND 37, ¶ 14, 812 N.W.2d 413; 73 Am.Jur.2d *Statute of Frauds* § 298 (2012). "[T]he acts relied upon as constituting part performance must unmistakably point to the existence of the claimed agreement." *Rickert*, at ¶ 14 (quoting *In re Estate of Thompson*, 2008 ND 144, ¶ 13, 752 N.W.2d 624). These acts must be such that they "change the plaintiff's position and would result in fraud or hardship upon the plaintiff if the contract were not executed or enforced." 73 Am.Jur.2d *Statute of Frauds* § 297 (2012); *see Henry S. Grinde Corp. v. Klindworth*, 77 N.D. 597, 608, 44 N.W.2d 417, 425 (1950). They must be "of such character that it is impossible or impracticable to place the parties in status quo, or to restore or compensate the party performing for what he or she has parted with, or the value of his or her performance . . . ." 37 C.J.S. *Statute of Frauds* § 189 (2008). The acts relied upon by a party to satisfy part performance must have been performed by the party seeking enforcement of the contract. 73 Am. Jur.2d *Statute of Frauds* § 303 (2012); 37 C.J.S. *Statute of Frauds* § 189.

[¶ 25] In its findings of fact, conclusions of law, and order for judgment, the district court found that the disputed property totaled 438.8 acres, that both Shirley Trosen and Jeff Trosen testified the rent was to be $65 per acre, and that Jeff Trosen gave Shirley Trosen a rent check for $28,522. These findings were not clearly erroneous. Jeff Trosen's tender of a check for that specific amount appears to be consistent only with the existence of the alleged lease of 438.8 acres at $65 per acre. Shirley Trosen and Brent Trosen provided no logical alternative explanation for the issuance of a check in that precise amount.

[¶ 26] The district court also found that after the lease was signed, Shirley Trosen switched the operator listed with FSA

from Brent Trosen to Jeff Trosen. The court found that Jeff Trosen received a January 6, 2011 letter from the FSA notifying him that he was the operator of the disputed land. After a review of the record, we conclude that these findings were not clearly erroneous. This act by Shirley Trosen is consistent only with the existence of the contract entered into between her and Jeff Trosen. Shirley Trosen and Brent Trosen argue that this act merely indicated that she may have planned to eventually lease the land to Jeff Trosen, but only after conferring with Brent Trosen. However, it would be illogical for Shirley Trosen to change the listed operator of the disputed property if she had not yet made the decision to lease the land to Jeff Trosen. Shirley Trosen and Brent Trosen also argue Shirley Trosen's act was insignificant because she switched the listed operator back to Brent Trosen four days later. However, Shirley Trosen's later conduct does not affect the legal significance of her actions.

[¶ 27] Assuming for the purpose of argument that payment of rent and receipt of possession through the FSA letter were sufficient to show part performance occurred, this conduct did not change Jeff Trosen's position to the point where fraud or hardship would result if equitable relief were not granted. As the district court noted, Shirley Trosen did not cash the rent check, and she eventually returned it to Jeff Trosen. A second FSA letter, notifying Jeff Trosen that he was no longer listed as operator of the disputed property, was issued four days after the first letter. The record does not show that the alleged part performance resulted in any additional cost to Jeff Trosen. Based on these facts, we conclude Jeff Trosen's position was not changed to the point where fraud or hardship would result if equitable relief is not granted. By the time this action was commenced, the parties were restored to status quo.

[¶ 28] We hold Jeff Trosen has not shown part performance of the contract, which removed the contract from the statute of frauds, and supports equitable relief. This Court "will not set aside a correct result merely because the district court's reasoning is incorrect if the result is the same under the correct law and reasoning." *Investors Title Ins. Co. v. Herzig*, 2010 ND 169, ¶ 40, 788 N.W.2d 312 (quoting *Sanders v. Gravel Products, Inc.*, 2008 ND 161, ¶ 9, 755 N.W.2d 826). The district court reached the right result with respect to Jeff Trosen's equitable claims, but for the wrong reason.

IV

[¶ 29] We affirm the district court judgment.

[¶ 30] MARY MUEHLEN MARING, S.J., and DALE V. SANDSTROM, J., concur.

GERALD W. VANDE WALLE, C.J., concurs in the result.

[¶ 31] The Honorable LISA FAIR McEVERS was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge MARY MUEHLEN MARING, sitting.

CROTHERS, Justice, concurring in part and dissenting in part.

[¶ 32] I concur in Part II of the majority opinion affirming the district court's granting of the defendants' Rule 50 motion and dismissing Jeff Trosen's legal claims. I dissent from Part III because Jeff Trosen did not brief the dismissal of his equitable claims. Issues not briefed on appeal are deemed abandoned. *See State v. Duchene*, 2007 ND 31, ¶ 10, 727 N.W.2d 769

("Issues not briefed by an appellant are deemed abandoned, and thereby become the law of the case and will not be considered on appeal."). Accordingly, this Court's decision on dismissal of the equitable claims is an improper advisory opinion. *See Sandberg v. American Family Ins. Co.*, 2006 ND 198, ¶¶ 19–21, 722 N.W.2d 359 (Crothers, J., concurring specially).

[¶ 33]  Daniel J. Crothers