**Corrected Opinion Filed 07/13/2023 by Clerk of the Supreme Court**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 124

In the Matter of the Estate of Chiyoko Ewing, Deceased

| | |
|---|---|
| Michael B. Ewing, Personal Representative, | Petitioner and Appellant |
| v. | |
| Benjamin G. Ewing, Personal Representative for the Estate of Jeffery Lee Ewing, | Respondent and Appellee |
| and | |
| Sherry Ewing, Nancy Burkhart, | Respondents |
| and | |
| Anne Askjem, legal guardian of J.B.A., | Interested Party |

## No. 20220356

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Lolita G. Hartl Romanick, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Chad E. Anderson, Bismarck, ND, for petitioner and appellant; submitted on brief.

Scott J. Landa, Grand Forks, ND, for respondent and appellee; submitted on brief.

**McEvers, Justice.**

[¶1]   Michael Ewing, personal representative, appeals from a district court's judgment, amended judgment, and order on motion to show cause. On appeal, Michael Ewing argues the court erred in finding an oral contract between the parties, mutual assent on all terms of the contract, and partial performance of an oral agreement sufficient to remove it from the statute of frauds. Michael Ewing also argues the district court's findings of fact regarding ownership of personal property, whether the real property was maintained, responsibility for administration costs, and the award and offset of damages were clearly erroneous. We affirm.

I

[¶2]   Michael Ewing is the personal representative of the estate of Chiyoko Ewing, his mother. Chiyoko Ewing died in 1989 leaving a will devising all of her property in equal shares to her four children: Michael Ewing, Jeffery Ewing, Sherry Ewing, and Nancy Burkhart. At the time of her death, Chiyoko Ewing owned a home in Grand Forks as well as various items of personal property located within the home. Following her death, Jeffery Ewing lived in and maintained the home, paid the real estate taxes and the mortgage, and made substantial improvements to the home. Jeffery Ewing died in 2019.

[¶3] In March 2019, Michael Ewing filed an application for informal appointment of a personal representative for Chiyoko Ewing's estate. In December 2019, the district court ordered the administration of Chiyoko Ewing's estate be supervised. On January 9, 2020, Michael Ewing filed an "Inventory and Appraisement" identifying the property owned by Chiyoko Ewing at the time of her death. The report included the home and some items of personal property.

[¶4] In December 2020, an evidentiary hearing was held to determine ownership of the property. The court found the siblings agreed they did not want to sell the home to a stranger. The issues of whether oral agreements

existed between Jeffery Ewing and the siblings were contested. All of the living siblings testified, as did Jeffery Ewing's son, Benjamin Ewing. Pennie Korynta, Jeffery Ewing's ex-wife, also testified to these agreements and the payments made by Jeffery Ewing to the siblings for their shares of the home. The district court found two of the siblings had an oral agreement that they would sell their shares of the home to Jeffery Ewing. The price of the siblings' individual interest in the home was calculated by taking the assessed value of the home less the unpaid mortgage and dividing that by four, the number of siblings. The court found Jeffery Ewing and Sherry Ewing entered into a written purchase agreement memorializing the agreement, while the agreements between Michael Ewing and Jeffery Ewing and Nancy Burkhart and Jeffery Ewing were verbal. No deeds transferring the property from the Chiyoko Ewing estate to Jeffery Ewing were ever signed. While living in the home, Jeffery Ewing made substantial improvements such as remodeling the main floor, reconstructing the basement, improving the exterior, and upgrading the mechanical systems. In March 2021, the district court entered a judgment, finding the estate of Jeffery Ewing owned the home. Michael Ewing appealed. This Court dismissed the appeal concluding the administration of the estate was not complete because the personal property was not addressed.

[¶5]  In January 2022, another evidentiary hearing was held to address ownership of the items of personal property identified on the inventory list. While it was disputed at the evidentiary hearings, the district court found the siblings already divided the personal property amongst themselves by agreement. The district court entered an amended judgment finding all items of personal property, with two exceptions not at issue here, were assets of the estate of Jeffery Ewing and ordered Michael Ewing to return those items to the estate. The district court ordered the distribution of the real estate and personal property, and determined what expenses were to be reimbursed to Micheal Ewing as the personal representative. The court divided the expenses for administration of the Chiyoko Ewing estate equally among the three remaining siblings and the Jeffery Ewing estate.

[¶6]  In July 2022, the estate of Jeffery Ewing moved for an order to show cause as to why Michael Ewing should not be held in contempt for failure to

Filed by Clerk of Supreme Court 07/13/23

deliver the items of personal property. That motion was amended in September 2022 to address damage to the home while in custody of the personal representative, Michael Ewing. In October 2022, the court issued its order on motion for order to show cause finding Michael Ewing to be in contempt of court and awarding damages of $17,915.35 and attorney's fees of $1,000.00 as a sanction. The court then offset the amount owed by the Jeffery Ewing estate to the Chiyoko Ewing estate for administrative expenses by amounts owed to the Jeffery Ewing estate by Michael Ewing. Michael Ewing appeals.

## II

[¶7]   Michael Ewing asserts the district court made various errors regarding the formation of contracts between Jeffery Ewing and himself and his siblings for the conveyance of their interests in Chiyoko Ewing's home. We will address each contractual formation issue in turn.

## A

[¶8]   Michael Ewing argues the district court erred in finding contracts existed between Jeffery Ewing and his siblings because the parties were not capable of contracting. Michael Ewing argues he and his siblings never owned any interest in the real property and thus were incapable of contracting. Michael Ewing argues that upon the death of Chiyoko Ewing, the real property was owned by the estate of Chiyoko Ewing.

[¶9]   The standard of review for capacity to contract is well-established:

> A district court's finding on capacity, or lack of capacity, is a question of fact. We will not set aside a district court's finding of fact unless it is clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. In a bench trial, the district court determines credibility issues, which we will not second-guess on appeal. We do not reweigh evidence or reassess credibility, nor do we reexamine findings of fact made upon conflicting testimony. We give due regard to the trial court's opportunity to assess the credibility of the witnesses, and the

3

court's choice between two permissible views of the evidence is not clearly erroneous. A court's findings of fact must reflect the basis of its decision and enable this Court to understand its reasoning. Findings of fact are adequate if we can discern the court's rationale for its decision.

*Hartman v. Grager*, 2021 ND 160, ¶ 14, 964 N.W.2d 482. All persons are capable of contracting except minors and persons of unsound mind. N.D.C.C. § 9-02-01. *See Grager*, 2021 ND 160, ¶ 15. A person's real and personal property devolves upon death to the persons to whom it is devised subject to administration. N.D.C.C. § 30.1-12-01. Therefore, property interests pass upon death, not distribution. *Feickert v. Frounfelter*, 468 N.W.2d 131, 132 (N.D. 1991). Michael Ewing presented no evidence that he was a minor or of unsound mind at the time of contracting, nor does the record show he or any of his siblings were incapacitated in any way. While the record title did not reflect Michael Ewing and his siblings as owners in 1991, their equal share interests in the home passed to them upon the death of Chiyoko Ewing in 1989. Therefore, Michael Ewing and his siblings had a valid interest in the home upon her death, and no evidence was presented to suggest they were otherwise incapable of contracting. The district court did not clearly err in finding Michael Ewing and his siblings were capable to contract.

B

[¶10] Michael Ewing next argues there was insufficient evidence to find the payment of consideration because no written documentation was provided to corroborate that Jeffery Ewing had made any payments to Michael Ewing or Nancy Burkhart for their respective interests in the property.

[¶11] The existence of an oral contract and the extent of its terms are questions of fact subject to the clearly erroneous standard of review. *WFND, LLC v. Fargo Marc, LLC*, 2007 ND 67, ¶ 38, 730 N.W.2d 841. The existence of consideration is a question of law, but whether consideration has failed is a question of fact. *In re Estate of Jorstad,* 447 N.W.2d 283, 285 (N.D. 1989). In the context of a contract, consideration means any benefit conferred or detriment suffered. *Teigen v. State*, 2008 ND 88, ¶ 30, 749 N.W.2d 505. A finding of fact is clearly

erroneous if it is not supported by any evidence or if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous view of the law. *WFND*, 2007 ND 67, ¶ 13.

[¶12] The district court specifically found that all the siblings, including Michael Ewing, testified that they knew it was Jeffery Ewing's intent to purchase their shares of the home. The court found the siblings agreed Jeffery Ewing would purchase their shares for $7,437.50 each. This value was calculated by subtracting the balance of the unpaid mortgage from the assessed value of the home and dividing the difference by the number of siblings. Although the court found no written documentation was provided to corroborate that Jeffery Ewing had made any payments to Michael Ewing for his interest in the home, this issue came down to the credibility of the witnesses at trial. The district court specifically found the testimony of Pennie Korynta to be credible regarding payments Jeffery Ewing made for the property to the other siblings. Korynta testified Jeffery Ewing made payments to his siblings for their shares in the property. We will not reassess the credibility determinations made by the court regarding Korynta's testimony of the payments made by Jeffery Ewing to the siblings for the home. *See Grager*, 2021 ND 160, ¶ 14. We will not second-guess the district court on its credibility determinations made during a bench trial. *Miller v. Nodak Ins. Co.*, 2023 ND 37, ¶ 12, 987 N.W.2d 369. The court found credible the testimony presented by the estate of Jeffery Ewing that all the siblings agreed to sell their interests in the home and that each was paid, thus creating a benefit conferred in selling their share of the home to Jeffery Ewing for payment. The court did not find Michael Ewing's testimony to the contrary as credible. The court did not err in finding consideration existed for the contract.

C

[¶13] Michael Ewing next argues the district court erred in finding mutual assent to all essential terms of the contract because the testimony from the siblings was that they never agreed on a purchase price.

[¶14] There must be mutual intent to create a legal obligation. *Lire, Inc. v. Bob's Pizza Inn Restaurants, Inc.,* 541 N.W.2d 432, 434 (N.D. 1995). Under some circumstances, an inference of assent is necessary. *B.J. Kadrmas, Inc. v. Oxbow Energy, L.L.C.,* 2007 ND 12, ¶ 13, 727 N.W.2d 270. When there is a voluntary acceptance of the benefit of a transaction it is the equivalent to consent to the obligations arising from it so far as the facts are known or ought to be known to the person accepting. *Id.* (citing N.D.C.C. § 9-03-25). As discussed in detail in the previous section, all the siblings, including Michael Ewing, testified that they knew it was Jeffery Ewing's intent to purchase their shares of the home. The district court found the siblings came to the agreed upon purchase price based on the value of the house less the unpaid mortgage, divided by the number of siblings. The court found that although there was not a written contract between Michael Ewing and Jeffery Ewing, the two had agreed upon the value of Michael Ewing's share and the sale of that share to Jeffery Ewing. While the siblings may have testified differently than Pennie Korynta, these findings are supported by the record and we will not reweigh the evidence. The court's finding that mutual assent existed between the parties for the contract was not clearly erroneous.

D

[¶15] Michael Ewing next argues the district court erred in finding partial performance of an oral agreement sufficient to remove it from the statute of frauds.

[¶16] An agreement for the sale of real property, or of an interest therein, must generally be in writing under the statute of frauds. N.D.C.C. § 9-06-04(3). The statute of frauds makes a contract for the sale of real property invalid unless it is in writing. *Lund v. Swanson*, 2021 ND 38, ¶ 9, 956 N.W.2d 354. However, part performance may remove an agreement from the statute of frauds. *City of Glen Ullin v. Schirado*, 2021 ND 72, ¶ 15, 959 N.W.2d 47. In order to succeed on a claim of part performance, the claimant must show that the alleged part performance is consistent only with the existence of the alleged oral contract. *Trosen v. Trosen*, 2014 ND 7, ¶ 24, 841 N.W.2d 687. The acts relied upon must be such that they "change the plaintiff's position and would result in fraud or

6

hardship upon the plaintiff if the contract were not executed or enforced." *Id*. Valuable, substantial, and permanent improvements may be considered part performance. *Broten v. Broten*, 2015 ND 127, ¶ 10, 863 N.W.2d 902.

[¶17] Michael Ewing claims a finding of partial performance removing an oral agreement from the statute of frauds is a question of law. The authority he relied on does not support his argument. Part performance is an equitable argument which was tried to the district court. *See Trosen*, 2014 ND 7, ¶ 20. The standard of review of a bench trial is clear:

> In an appeal from a bench trial, the trial court's findings of fact are reviewed under the clearly erroneous standard of N.D.R.Civ.P. 52(a) and its conclusions of law are fully reviewable. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. In a bench trial, the trial court is the determiner of credibility issues and we do not second-guess the trial court on its credibility determinations.

*Id*.

[¶18] Partial payment of the purchase price alone is not justification for enforcing an oral contract to convey land, but partial payment together with other acts such as possession or the making of valuable improvements may be sufficient to take a contract out of the statute of frauds. *Schirado*, 2021 ND 72, ¶ 15. The improvements made must be valuable, substantial, and permanent. *Id*. In *Williston Co-op Credit Union v. Fossum*, we affirmed the district court when it found constructing and operating a business on the property and paying approximately $25,000 towards the purchase price of the property were sufficient to find part performance. 459 N.W.2d 548, 552 (N.D. 1990).

[¶19] The district court here found it was undisputed Jeffery Ewing paid the insurance, utilities, real estate taxes, and the mortgage on the property. The court found credible Pennie Koynta's testimony that Jeffery Ewing paid each siblings' share of the home, and the actions Jeffery Ewing took to substantially improve the property demonstrated the parties had orally agreed to transfer

the property to him. The court found Jeffery Ewing substantially and permanently improved the property by installing fencing, pavers, a deck, and concrete. He also re-shingled the house, poured a new concrete driveway, and built a substantial addition to the garage, expanding it from one or two stalls to four stalls. He also lifted the home off its foundation, dug out the ground beneath it, and increased the size of the basement. These improvements are similar to the permanence and importance of the improvements made in *Fossum*—constructing a new building on the property. The district court's finding that the improvements made by Jeffery Ewing were substantial and permanent is supported by the evidence. The court specifically found "[t]he actions taken in the improvements made to the Property with no protest by Nancy Burkhart or by Michael Ewing clear[ly] and convincingly demonstrate the parties had orally agreed to transfer the Property to Jeffery." The court's findings regarding substantial performance removing the oral contract from the statute of frauds are not clearly erroneous.

III

[¶20] Michael Ewing next argues the district court erred in finding the personal property that remained in the home became property of the Jeffery Ewing estate because Chiyoko Ewing's will left the property equally to all four of her children. In an appeal from a judgment entered after a bench trial, this Court reviews the district court's legal conclusions de novo and its factual findings under the clearly erroneous standard. *In re Estate of Lindvig*, 2020 ND 236, ¶ 7, 951 N.W.2d 214.

[¶21] Michael Ewing claims various items of personal property identified in the document he created entitled "Inventory and Appraisement" should have been awarded to him rather than the estate of Jeffery Ewing. This assertion ignores the district court's finding of fact that the siblings already divided the personal property in the home four ways after Chiyoko Ewing's death and that the items listed in the "Inventory" document were items the siblings agreed to assign to Jeffery Ewing. Following the first evidentiary hearing, the district court found that the children had, by agreement, divided the personal property amongst themselves after Chiyoko Ewing's death. At the second evidentiary

8

hearing, Pennie Korynta corroborated this and testified that, following Chiyoko Ewing's death, and while Korynta was living in the home, the siblings met at the home and went through all the personal property and distributed it equally. The court found Michael Ewing's list of personal property did not accurately reflect the personal property that was in Chiyoko Ewing's estate at the time of her death and does not reflect to whom the property was distributed. The court found Michael Ewing's testimony not credible. The court found all personal property items, except two, belonged to the estate of Jeffery Ewing per the distribution the siblings agreed to after Chiyoko Ewing's death. We are not convinced the court's findings are clearly erroneous.

IV

[¶22] Michael Ewing next argues the district court erred in finding he failed to maintain the estate property as the personal representative. A personal representative is a fiduciary who shall observe the standards of care applicable to trustees. N.D.C.C. § 30.1-18-03(1). Whether a personal representative breached a fiduciary duty is a question of fact. *In re Estate of Gleeson*, 2002 ND 211, ¶ 17, 655 N.W.2d 69. A trial court's finding of fact will not be set aside unless it is clearly erroneous. *Id*.

[¶23] The district court found Michael Ewing failed to properly maintain the home as personal representative. This finding was based on testimony at the evidentiary hearing showing the home sustained damages of $10,987 for mold remediation and $6,928.35 for restoration. The record supports the court's finding that Michael Ewing breached his duty on numerous occasions. He failed to obtain insurance for the home. He did not care for the lawn or remove snow. He did not keep up with payment for the utilities, which resulted in water damage when excessive rain came and the sump pump did not operate. Michael Ewing's neglect of the property allowed mold to grow. The court's finding Michael Ewing failed to maintain the home as personal representative is not clearly erroneous.

## V

[¶24] Michael Ewing next argues the district court erred in finding the heirs of the estate individually responsible for administration costs of the estate. He argues he should have been reimbursed for these costs as the personal representative.

[¶25] Under N.D.C.C. § 30.1-18-19, a personal representative may be entitled to reasonable compensation for his services. *In re Estate of Albrecht*, 2020 ND 27, ¶ 31, 938 N.W.2d 151. The review of fees paid or taken by the personal representative is left to the sound discretion of the district court. *In re Estate of Wicklund*, 2014 ND 64, ¶ 16, 844 N.W.2d 565. This Court should not overturn the district court's decision on a personal representative's compensation or fees paid absent a showing of an abuse of discretion. *Id*. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Puklich v. Puklich*, 2022 ND 158, ¶ 16, 978 N.W.2d 668.

[¶26] The district court explained that it denied Michael Ewing's various claims for reimbursement for his services as personal representative and costs due to him failing to provide evidence and detailed receipts as to the expenses he allegedly incurred as personal representative. He claimed to make trips from Minot to Grand Forks to maintain the property; however, Michael Ewing offered no evidence on what work was done on those alleged trips. Michael Ewing did not provide sufficient evidence as to why he should be reimbursed for all of his claimed expenses as personal representative. We conclude the court's findings determining the fees and expenses of the personal representative are not clearly erroneous. Likewise, the court did not abuse its discretion in assigning the costs of estate administration equally amongst the siblings.

## VI

[¶27] Michael Ewing next argues the district court erred in offsetting amounts owed by the estate of Jeffery Ewing to him, as personal representative, based

10

on the remedial damages it ordered he pay. The estate of Jeffery Ewing owed Michael Ewing, as personal representative, the amount of $11,627.34 for attorney's fees, real estate taxes, and utilities paid by Michael Ewing, and for mileage incurred by Michael Ewing on making trips to the home.

[¶28] Section 30.1-18-12, N.D.C.C., provides that the personal representative is liable to interested persons for damage resulting from a breach of fiduciary duty. A district court may make an offset in the distribution of estate property to compensate a party damaged by a breach of fiduciary duty. *In re Estate of Hogen*, 2019 ND 141, ¶ 3, 927 N.W.2d 474. A court may also impose a remedial or punitive sanction for contempt under N.D.C.C. § 27-10-01.2(1).

[¶29] As discussed in detail above, the district court found Michael Ewing breached his duty as the personal representative of the estate by failing to maintain the property. The district court found that as a result of Michael Ewing's failure to maintain the property as the personal representative, the damages caused by Michael Ewing shall be offset against the amounts the estate of Jeffery Ewing owes him. The court had the power to make an offset because there was a finding of a breach of fiduciary duty. The court also found Michael Ewing to be in contempt for failing to deliver the items of personal property to the estate of Jeffery Ewing as required by the amended judgment. These findings are supported by the record. Therefore, we conclude the district court did not abuse its discretion in offsetting the amount owed to Michael Ewing from the estate of Jeffery Ewing.

## VII

[¶30] We have considered the remaining issues and arguments raised by Michael Ewing and conclude them to be either without merit or unnecessary to our decision. We affirm the district court's order and judgment.

[¶31] Jon J. Jensen, C.J.
  Daniel J. Crothers
  Lisa Fair McEvers
  Jerod E. Tufte
  Douglas A. Bahr