2007 ND 88

**D.G.L. TRADING CORPORATION, Plaintiff and Appellant**

v.

**Jeffrey REIS, Defendant and Appellee.**

**No. 20070052.**

Supreme Court of North Dakota.

June 7, 2007.

Dennis William Lindquist, Mandan, ND, for plaintiff and appellant.

Thomas F. Murtha, Murtha Law Office, Dickinson, ND, for defendant and appellee.

CROTHERS, Justice.

[¶ 1] D.G.L. Trading appeals the district court judgment finding Jeffrey Reis not liable for the diamond he was returning and the $7,000 cash payment he testified he shipped to D.G.L. via FedEx. The district court did not apply N.D.C.C. §§ 41–02–43 (U.C.C. § 2–326) and 41–02–44 (U.C.C. § 2–327) and did not resolve conflicts in the evidence to determine whether the parties agreed to alter the assignment of the risk of loss. We therefore reverse the district court's judgment and remand for application of the appropriate law consistent with this opinion.

I

[¶ 2] Jeffrey Reis buys diamonds from various suppliers and re-sells them locally. He does business under the name "African Ice." D.G.L. Trading is a New York corporation which sells gemstones. Reis and D.G.L.'s president, Tarun Patel, completed four or five gemstone transactions from 2001 to 2005. In October of 2005, Reis ordered and received two diamonds from D.G.L., agreeing on the prices of $8,200 for a 2.01 carat "diamond round" and $868 for a .62 carat "diamond princess." Reis testified he sold and received a $7,000 cash partial payment for the "diamond round." Reis testified he returned the "diamond princess" and the $7,000 in cash to D.G.L. via FedEx. Both parties agree the parcel disappeared in transit. FedEx acknowledged the loss and tendered Reis $123: $100 in basic insurance coverage and $23 for reimbursed shipping costs. Reis had not negotiated FedEx's check at the time of trial.

[¶ 3] D.G.L. sued Reis to collect payment for the "diamond round" and for the loss of the "diamond princess." At the bench trial, D.G.L. entered two exhibits: copies of an invoice and a memorandum. The memorandum was shipped with the diamonds on October 31, 2005, and the invoice followed. The memorandum purported to lay out the relationship of the parties and their respective rights to, and liabilities for, the diamonds. If intended by the parties to control their transaction, the memorandum would alter the rights and obligations otherwise established under N.D.C.C. §§ 41–02–43 (U.C.C. § 2–326) and 41–02–44 (U.C.C. § 2–327). However, neither party brought the language of the memorandum to the district court's attention, nor did the court appear to consider the memorandum in its decision.

[¶ 4] After hearing testimony from Patel and Reis, the district court found that the parties did business with each other "on an approval basis" as "merchants as defined by NDCC [§ ] 41–02–04," and that Reis "did not commit fraud in his actions." The district court concluded:

> [Reis's] duty ended when he put the package with its contents into the hands of carrier FedEx. FedEx lost the package. [D.G.L.'s] remedy for the differ-

ence between $8,200 and $7,000 along with the returned gem lies with FedEx, not [Reis].

[¶ 5] On appeal, D.G.L. argues the transaction was a "sale or return" under N.D.C.C. § 41–02–43(1)(b) (U.C.C. § 2–326), and the risk of loss lies with Reis under N.D.C.C. § 41–02–44(2)(b) (U.C.C. § 2–327). D.G.L. also argues it is left with no remedy with FedEx because Reis was the party to whom FedEx was liable for the lost parcel. Reis argues the transaction was a "sale on approval" under N.D.C.C. § 41–02–43(1)(a) (U.C.C. § 2–326), and the risk of loss lies with D.G.L. under N.D.C.C. § 41–02–44(1) (U.C.C. § 2–327).

## II

### A

■ [¶ 6] We first consider the appropriate scope of our review. Both parties now argue that sections 41–02–43 (U.C.C. § 2–326) and 41–02–44 (U.C.C. § 2–327), N.D.C.C., are applicable and controlling. The district court applied a portion of the U.C.C.-based statutes, specifically N.D.C.C. § 41–02–04 (U.C.C. § 2–104), to conclude both parties were "merchants." However, the record does not indicate the basis for the district court's conclusion that the sale was "on approval." In addition, the record does not show that either party alerted the district court to the other relevant U.C.C.-based statutes or that the district court considered or applied the relevant statute to determine which party shouldered the risk of loss in a sale "on approval."

■ [¶ 7] Our general rule is that questions not raised before the district court will not be considered on appeal. *Griggs v. Fisher*, 2006 ND 255, ¶ 8, 725 N.W.2d 201. However, this rule cannot be applied so narrowly that we affirm er-

roneous or incomplete applications of law in favor of judicial expediency. Therefore, it is appropriate we consider and apply the correct statutes in this case, even if they were not presented to the district court in the first instance. *See State ex rel. Bank of North Dakota v. Larsen*, 515 N.W.2d 178, 182 (N.D.1994) (quoting *Elder v. Holloway*, 510 U.S. 510, 512, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994)) ("We have a duty to conduct appellate review 'in light of all relevant precedents, not simply those cited to or discovered by the district court.' Otherwise, decisions might turn on 'shortages in counsels' or the court's legal research or briefing,' and 'could occasion appellate affirmation of incorrect legal results.' "); *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

[¶ 8] The district court found the parties conducted business on an "approval basis" and concluded both parties are merchants under N.D.C.C. § 41–02–04 (U.C.C. § 2–104). The district court did not appear to apply any other sections of ch. 41–02, N.D.C.C., and we are uncertain what formed the basis of the district court's decision. As we explain below, before determining which party bore the risk of loss, the circumstances of this case required that the district court first should have determined whether the transaction was a "sale on approval," a "sale or return," a consignment, or some other form of transaction agreed to by the parties.

### B

[¶ 9] D.G.L. contends its transaction with Reis was a "sale or return" governed

by N.D.C.C. § 41–02–43(1)(b) (U.C.C. § 2–326). Reis contends this transaction with D.G.L. was a "sale on approval" governed by N.D.C.C. § 41–02–43(1)(a) (U.C.C. § 2–326). The statute provides:

1. Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:

a. A "sale on approval" if the goods are delivered primarily for use.

b. A "sale or return" if the goods are delivered primarily for resale.

2. Goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

3. Any "or return" term of a contract for sale is to be treated as a separate contract for sale within the statute of frauds section of this chapter (section 41–02–08) and as contradicting the sale aspect of the contract within the provisions of this chapter on parol or extrinsic evidence (section 41–02–09).

N.D.C.C. § 41–02–43 (U.C.C. § 2–326).

[¶ 10] The official comment to Uniform Commercial Code § 2–326:121 notes:

1. Both a "sale on approval" and a "sale or return" should be distinguished from other types of transactions with which they frequently have been confused. A "sale on approval," sometimes also called a "sale on trial" or "on satisfaction," deals with a contract under which the seller undertakes a risk in order to satisfy its prospective buyer with the appearance or performance of the goods that are sold. The goods are delivered to the prospective purchaser but they remain the property of the seller until the buyer accepts them. The price has already been agreed. The buyer's willingness to receive and test the goods is the consideration for the seller's engagement to deliver and sell. A "sale or return," on the other hand, typically is a sale to a merchant whose unwillingness to buy is overcome by the seller's engagement to take back the goods (or any commercial unit of goods) in lieu of payment if they fail to be resold. A "sale or return" is a present sale of goods which may be undone at the buyer's option. . . .

These two transactions are so strongly delineated in practice and in general understanding that every presumption runs against a delivery to a consumer being a "sale or return" and against a delivery to a merchant for resale being a "sale on approval."

3A Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* § 2–326:121 (2002 & Supp. 2006).

■ [¶ 11] U.C.C. sections 2–326 and 2–327 allow for return of conforming goods and allocate the related risk of loss between the buyer and seller, unless otherwise agreed by the parties. *See* N.D.C.C. §§ 41–02–43(1) (U.C.C. § 2–326) and 41–02–44 (U.C.C. § 2–327). These provisions allow parties to make separate contracts regarding the return terms and risk of loss. Because the North Dakota statutes modeled after U.C.C. sections 2–326 and 2–327 were not considered below, the unanswered question in this case is whether the parties created a separate contract as evidenced by their course of dealing, course of performance, the memorandum, their oral agreement as explained in the testimony, or any combination of the foregoing. That question must be answered by the district court as the first step in determining which party bore the risk of loss in this case.

[¶ 12] Here, the parties testified regarding their course of dealing and, maybe, course of performance. They also

gave conflicting testimony about the nature of this transaction. Tarun Patel, D.G.L.'s president, testified several times the transaction was a sale "on approval." Yet there was no evidence consistent with N.D.C.C. § 41–02–43(1) (U.C.C. § 2–326) that D.G.L. delivered the diamonds to Reis "primarily for use." This discrepancy between the law, the testimony, and the district court's findings was not reconciled or explained.

[¶ 13] Also unresolved with the other evidence was the fact D.G.L. shipped the merchandise with a memorandum listing D.G.L. as the "consignor" and Reis's business, "African Ice," as the "consignee" and the memorandum's effect on the transaction. The text of the memorandum provides:

The goods described, listed and valued on the front of this memorandum are delivered to the consignee for examination and inspection only. In accepting said goods, consignee agrees that until payment for the goods is made or until the goods are returned and actually received by consignor title shall remain with the consignor and all risk of loss shall be that of the consignee. Consignee agrees that consignee's liability for all risks of loss shall be that of an insurer. Payment as the term used herein shall be offered as legal tender. If an installment is used as payment, said payment shall not be considered accomplished until the funds represented by such are actually collected[.] Consignee warrants and represents and agrees that consignee has sufficient "all risks" insurance in effect with a reputable insurer to cover the goods subject to this agreement and memorandum and any other obligations thereunder[.][I]t is further agreed and warranted by the consignee that consignor is the intended beneficiary of any insurance of the consignee and that consignor may make claim upon consignee's insurer and the consignee's policy or any loss hereunder and that any such claim shall be settled, adjusted, and paid to the consignor to the extent of the consignor[']s interest hereunder[.] Further the proceeds of any claim on the consignee's insurance are assigned to consignor to the extent of consignee's liability under this memorandum for the goods subject hereof. In respect to litigation by consignor against consignee hereunder the parties agree to the jurisdiction of the courts in New York and that New York law applies in any such action or proceeding by consignor against consignee. The consignee agrees that it will at the option of consignor wa[i]ve trial by jury if the consignor is required to bring any action hereunder against the consignee. The consignee agrees to pay consignor in [sic] additional amount due under the memorandum in and for consideration of attorney's fees, to be liquidated in the amount of 25% of the total value of all the goods listed on this memorandum, until payment is received hereunder as above set forth. Consignee has no right, power or authority to sell, pledge, hypothecate or otherwise dispose of goods regardless of prior transactions[,] permission & [sic] granted consignor to file a financing statement under the U.C.C.

[¶ 14] Under the memorandum, title remained with D.G.L., but Reis bore the risk of loss and risk of payment until the diamonds or payment were received by D.G.L. This retention of title but transfer of risk provision was also at odds with the relevant U.C.C. provisions, Patel's description of the transaction as "on approval," and perhaps, the parties' dealings and performance in prior transactions.

### III

[¶ 15] The district court did not apply N.D.C.C. §§ 41–02–43 (U.C.C. § 2–326)

and 41–02–44 (U.C.C. § 2–327) and did not resolve conflicts in the evidence to determine whether the parties agreed to alter the assignment of the risk of loss. We therefore reverse the district court's judgment and remand for application of the appropriate law consistent with this opinion.

[¶ 16] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.