Filed 1/26/18 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2018 ND 34

Cindie Innis-Smith, Plaintiff, Appellee

 and Cross-Appellant

v.

Terry Smith, Defendant, Appellant

 and Cross-Appellee

No. 20170031

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Joshua B. Rustad, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Tufte, Justice.

Susan L. Ellison, West Fargo, N.D., for plaintiff, appellee, and cross-

appellant.

H. Malcolm Pippin, Williston, N.D., for defendant, appellant, and cross-

appellee.

Innis-Smith v. Smith

No. 20170031

Tufte, Justice.

[¶1] Terry Smith appeals, and Cindie Innis-Smith cross-appeals, an amended judgment granting the parties a divorce, dividing the parties’ marital property, and awarding Innis-Smith spousal support.  Smith also appeals an order denying his motion to reopen the record to present additional evidence relating to the values of certain items of marital property.  We affirm in part, reverse in part, and remand.

I

[¶2] Smith and Innis-Smith began dating in 1994, were engaged in 1996, and married in March 2006.  Smith worked as a welder, had a farming and cattle operation, and received income through a gravel pit, water depot, and mineral interests.  Smith also had an interest in his mother Jacqueline Smith’s revocable trust.  Innis-Smith assisted with Smith’s farming and cattle operations, did some bookkeeping for Smith, and helped care for his parents.

[¶3] Innis-Smith sued for a divorce in 2011.  At the April 2013 trial, Innis-Smith was sixty years old and Smith was sixty-one.  In May 2015, the district court issued its memorandum opinion and valued the net marital estate at $7,937,804.55.  The court awarded Smith $7,400,607.55 in property and Innis-Smith $558,206.50, plus a $3,431,705 cash payment from Smith to equalize the property distribution.  The court also awarded Innis-Smith $4,000 per month in permanent spousal support.

[¶4] The district court did not include Smith’s interest in his mother’s trust in the marital estate.  Jacqueline Smith died before trial, and the court concluded that under amendments she made to the trust during the divorce, Terry Smith’s interest lapsed to his daughters when Jacqueline Smith died.  The court held Smith had no interest in the trust at his mother’s death.

[¶5] After the district court issued its May 2015 decision, Smith moved the court under N.D.R.Civ.P. 59(j) to reopen the record to present additional evidence relating to the values of the water depot and mineral interests.  Smith argued the values of the water depot and mineral interests dramatically decreased between the April 2013 trial and May 2015 decision.  Smith attached an affidavit and exhibits purporting to show the value of the water depot decreased from $4,335,000 to $1,220,215, and the value of the mineral interests decreased from $1,113,950 to $598,637.  The court denied Smith’s motion after a hearing.

II

[¶6] Smith argues the district court erred in its distribution of the marital property.

[¶7] A district court’s distribution of marital property is a finding of fact and will not be overturned unless the findings areit is clearly erroneous.  
Lewis v. Smart
, 2017 ND 214, ¶ 10, 900 N.W.2d 812.  A factual finding is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence supporting it, or if, although there is some evidence to support it, on the entire record, we are left with a definite and firm conviction a mistake has been made.  
Id.
  “We view the evidence in the light most favorable to the findings, and the district court’s factual findings are presumptively correct.”  
Adams v. Adams
, 2015 ND 112, ¶ 13, 863 N.W.2d 232.  The clearly erroneous standard of review does not allow us to reassess the credibility of witnesses, reweigh the evidence, or substitute our judgment for a court’s initial decision.  
Hoverson v. Hoverson
, 2013 ND 48, ¶ 8, 828 N.W.2d 510.  A choice between two permissible views of the evidence is not clearly erroneous if the court’s findings are based on evidence in the record, inferences from other facts, or credibility determinations.  
Stephenson v. Stephenson
, 2011 ND 57, ¶ 7, 795 N.W.2d 357.

[¶8] Under N.D.C.C. § 14-05-24(1), a district court must equitably distribute the parties’ property and debts.  After including all of the marital assets and debts, the court must apply the 
Ruff-Fischer
 guidelines in dividing the property.  
Lewis
, 2017 ND 214, ¶ 10, 900 N.W.2d 812.  Under the 
Ruff-Fischer
 guidelines, the court  considers:

[T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

Lewis
, at ¶ 10 (quoting 
Rebel v. Rebel
, 2013 ND 116, ¶ 7, 833 N.W.2d 442).

[¶9] Smith argues the district court clearly erred by equally distributing the marital property.  Smith claims the parties’ short marriage does not justify an equal distribution.

[¶10] Here, in distributing the parties’ marital property, the district court made findings under the 
Ruff-Fischer
 guidelines.  In relevant part, the court discussed the length of the parties’ relationship, finding the circumstances of this case supported an equal division of property:

The testimony established that the parties began dating in 1994, and the relationship became serious fairly quickly with a promise ring purchased by Terry for Cindie in 1994 and an engagement ring being purchased in 1996.  As early as 1996, the parties entertained family members at Terry’s farm on holidays and that Cindie began living at Terry’s farm in 1997 along with her son.  Cindie asserts that the parties made financial decisions together such as deciding to remodel the house, building a garage and patio and creating a teardrop garden.  Cindie further indicated she worked in the yard and assisted with Terry’s cattle and farming operation and did some bookkeeping for Terry’s business.  Cindie also helped care for Terry’s parents and helped plan their 50
th
 anniversary party.  The parties separated from 2001-2002.

. . . .

The Court finds that the circumstances of this case support nearly equal division of the marital property even if characterized as short term, and that it would not be equitable to award each party what they brought into the marriage.  It is also appropriate to consider all the parties time together as they in essence lived like a married couple from 1997-2011, except for the separation previously addressed from 2001-2002.  
Horner [v. Horner]
, 2004 ND 165, ¶¶ 12, 13, 686 N.W.2d 131.  All assets, with the exception of the Jacqueline Smith Trust property addressed later, will be included in the marital estate and will be fairly and equitably distributed by looking at the Ruff-Fischer Guidelines.

[¶11] As discussed by the district court, 
Horner 
stated, “It is appropriate for a court to consider all of the parties’ time together in dividing the marital property when parties live together and then marry.”  
Horner v. Horner
, 2004 ND 165, ¶ 13, 686 N.W.2d 131.  The court found the parties lived like a married couple from 1997-

2011, with an intervening separation in 2001-2002.  The court’s remaining findings relating to the division of property have support in the record.  We cannot conclude the court clearly erred by equally dividing the parties’ property.  We are not left with a definite and firm conviction a mistake has been made.

III

[¶12] Smith argues the district court erred by not reopening the record to receive additional evidence relating to the values of the water depot and mineral interests after the court decided the case two years after trial.

[¶13] District courts have broad discretion in allowing or refusing to allow a party, after having rested, to reopen the record to introduce additional evidence.  
Vandal v. Leno
, 2014 ND 45, ¶ 26, 843 N.W.2d 313.  A court’s decision on a motion to reopen will not be disturbed on appeal unless the court abused its discretion.  
Id.
  A court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned decision.  
Estate of Johnson
, 2017 ND 162, ¶ 18, 897 N.W.2d 921.

[¶14] In his motion to reopen the record to present additional evidence, Smith claimed the values of the water depot and mineral interests substantially decreased between the April 2013 trial and May 2015 decision.  To support his argument, Smith submitted appraisals showing the value of the water depot decreased from $4,335,000 to $1,220,215, and the value of the mineral interests decreased from $1,113,950 to $598,637.

[¶15] The district court declined to reopen the record to hear additional evidence:

Revaluation of the East Fork Water Depot and mineral interests is inappropriate.  Marital property should be valued as of the date of trial, rather than the date of distribution because otherwise parties would be free to file additional evidence, not subject to cross-examination, whenever they believed a marital asset had changed in value.  This procedure would promote never-ending trial by affidavit.  This is not an extraordinary case involving a substantial, unanticipated change in valuation of an asset that occurred after trial but before distribution.  The marital assets Terry seeks to revalue are assets which values experience ebbs and flows depending on any number of factors, including the economy.  The value of these assets is constantly fluctuating, and the change will extend beyond the distribution of these assets.  
Compare Grinaker v. Grinaker
, 553 N.W.2d 204, 209 (N.D. 1996) (redistribution in case of a $1 lottery ticket which appreciated into a million-dollar jackpot in a single, one-time event that is straightforward and measurable in one instance).

Terry and Cindie stipulated and agreed upon the values for both the East Fork Water Depot and the mineral interests at the time of trial.  This Court holds Terry to his stipulation.

[¶16] In 
Grinaker v. Grinaker
, 553 N.W.2d 204, 208 (N.D. 1996), Gary Grinaker argued the district court erred in valuing the marital property as of the date of trial, rather than as of the date of distribution.  Six months after trial and just before the court’s ruling, Grinaker submitted information showing various accounts had appreciated in value since trial.  
Id.
  Gary Grinaker argued Debra Grinaker “received a $17,000 ‘windfall’ because of the appreciation after trial of accounts she received in the distribution.”  
Id.
  This Court stated marital property should be valued at trial and further explained:

Common sense dictates that marital property be valued as of the date of trial, rather than the date of distribution.  The trial court hears the evidence on value at trial, and the evidence will ordinarily give a current value for the property.  When valuing items like the mutual funds and variable annuities here, any evidence presented at trial on value for some future date would have been purely speculative.  The difficulty with the procedure attempted by Gary in this case is evident.  Parties would be free to file further “evidence,” not subject to cross-examination, whenever they believed a marital asset had changed in value.  This procedure would certainly lead to a never-ending trial by affidavit, with parties continually submitting account statements and other materials with each fluctuation of the financial markets.

We recognize that relief may be justified in extraordinary cases when a substantial, unanticipated change in valuation of an asset occurs after trial but before distribution.  Gary used the example of a lottery ticket valued at $1.00 at the time of trial that subsequently wins the million dollar jackpot.  Certainly it would be inequitable to award the ticket to one party valued at $1.00.  However, the proper procedure to remedy that result is a motion to reopen for additional evidence.  The parties could then present evidence of changes in values, with the opportunity to cross-examine witnesses and challenge the other party’s proffered valuation.  Gary did not move to reopen the trial, but sought amendment of the valuations based only upon his affidavit and an amended NDROC 8.3 statement.  Under these circumstances, we conclude the trial court did not err in valuing the property as of the date of trial.

Id.
 at 208-09 (citations omitted).

[¶17] Here, unlike 
Grinaker
, Smith moved to reopen the record to present additional evidence relating to the values of the water depot and mineral interests.  Smith moved to reopen after the district court issued its May 2015 memorandum opinion relating to the April 2013 trial.  The record does not indicate the reason for the court’s two-

year delay between trial and its decision.  
See
 N.D. Sup. Ct. Admin. R. 12, Section 2(a)(1) (Docket currency standards recommend judgments in general civil cases to be entered “within 24 months of the date the complaint was filed or within 90 days of the end of the trial, whichever is earlier.”).

[¶18] Smith submitted evidence supporting his motion to reopen showing a substantial decrease in the values of the water depot and mineral interests from the date of trial to the date of the district court’s May 2015 decision.  The parties stipulated to the values of the water depot and mineral interests at trial.  The water depot was valued at $4,335,000, and the mineral interests were valued at $1,113,950.  The water depot and mineral interests constitute approximately 68.6 percent of the total marital estate valued at $7,937,804.55.  Smith’s evidence, using the same valuation methods used at trial, indicated the value of the water depot decreased from $4,335,000 to $1,220,215, and the value of the mineral interests decreased from $1,113,950 to $598,637.  Smith’s evidence showed the total value of these assets decreased by approximately 67 percent between April 2013 and May 2015.

[¶19] In 
Grinaker
, we recognized “that relief may be justified in extraordinary cases when a substantial, unanticipated change in valuation of an asset occurs after trial but before distribution.”  553 N.W.2d at 209.  Nothing in the record shows either party anticipated the district court’s delay or the alleged changes in the values of the water depot and mineral interests.  On the basis of the delay between trial and the court’s decision, and the alleged substantial change in the values of the water depot and mineral interests, we conclude the court abused its discretion in denying Smith’s motion to reopen the record to allow the parties to present additional evidence on the values of the water depot and mineral interests.  We reverse the court’s order denying Smith’s motion to reopen, and remand for further proceedings relating to the values of the water depot and mineral interests.  If the court finds the values have changed, it must decide how to equitably share the change between the parties in light of its decision to equally divide the marital estate.

IV

[¶20] Smith argues the district court erred in awarding Innis-Smith $4,000 per month in permanent spousal support.

[¶21] A spousal support award is a finding of fact and will not be reversed on appeal unless clearly erroneous.  
Werven v. Werven
, 2016 ND 60, ¶ 18, 877 N.W.2d 9.  Section 14-05-24.1, N.D.C.C., allows a district court to award spousal support to a party for any period of time.  
Werven
, at ¶ 17.  Before awarding spousal support, a court must consider the 
Ruff-Fischer
 guidelines, along with the needs of the spouse seeking support and the supporting spouse’s needs and ability to pay.  
Williams v. Williams
, 2015 ND 129, ¶ 9, 863 N.W.2d 508.

[¶22] “Rehabilitative spousal support is awarded to equalize the burdens of divorce or to restore an economically disadvantaged spouse to independent status by providing a disadvantaged spouse an opportunity to acquire an education, training, work skills, or experience to become self-supporting.”  
Williams
, 2015 ND 129, ¶ 10, 863 N.W.2d 508 (quoting 
Wagner v. Wagner
, 2007 ND 33, ¶ 8, 728 N.W.2d 318).  Permanent spousal support may be appropriate when there is a substantial income disparity and a substantial disparity in earning power that cannot be adjusted by property division or rehabilitative support.  
Stephenson
, 2011 ND 57, ¶ 27, 795 N.W.2d 357.  Additionally, permanent spousal support may be appropriate to ensure parties equitably share the decrease in their standards of living.  
Id.
  Rehabilitative spousal support is preferred, but permanent spousal support may be necessary to maintain a spouse who cannot be adequately retrained to independent economic status.  
Williams
, at ¶ 10.

[¶23] The district court found Smith’s earning ability was significantly higher than Innis-Smith’s.  The court found Innis-Smith could earn “roughly $15,000 - $20,000 a year initially rising to $25,000 - $30,000 per year after a few years.”  The court found Smith “had an adjusted gross income of $876,297 in 2011 and a net of $919,120 in 2012,” along with mineral interest income.  The court also found the property awarded to Smith had significant income potential.  The court found Innis-

Smith was receiving $4,000 per month in interim spousal support, and had a lesser standard of living since the parties had separated.  The court found Smith enjoyed the same or greater standard of living since the separation.

[¶24] The district court awarded Innis-Smith permanent support after considering the 
Ruff-Fischer
 guidelines, Smith’s ability to pay, and Innis-Smith’s age, income, and needs.  On the basis of the court’s findings and our review of the record, we cannot conclude the court clearly erred in awarding Innis-Smith permanent spousal support.  The evidence supports the court’s findings, and we are not left with a definite and firm conviction a mistake has been made.  However, because we are remanding on the issue of valuation of the water depot and mineral interests, the court may also reconsider Smith’s spousal support obligation on remand.  
See
 
Stephenson
, 2011 ND 57, ¶ 28, 795 N.W.2d 357 (“spousal support and property division should be examined together”); N.D.C.C. § 14-05-24.1(1) (district court retains jurisdiction to modify spousal support orders).

V

[¶25] Innis-Smith argues Smith’s interest in his mother’s trust should have been included in the marital estate.  She claims the district court erred as a matter of law when it concluded Jacqueline Smith’s death terminated Terry Smith’s interest in the trust.

[¶26] Our primary goal in construing a trust agreement is to ascertain the settlor’s intent.  
Langer v. Pender
, 2009 ND 51, ¶ 13, 764 N.W.2d 159.  General rules of interpretation of written documents apply to the interpretation of trust instruments.  
Id.
 at ¶ 14.  Chapter 9-07, N.D.C.C., governs contract interpretation.  Under N.D.C.C. § 9-07-02, a contract’s language governs its interpretation “if the language is clear and explicit and does not involve an absurdity.”  “The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable.  Each clause is to help interpret the others.”  N.D.C.C. § 9-07-06.  Interpretation of an agreement is a question of law when the parties’ intent can be ascertained from the agreement alone.  
Alerus Financial, N.A. v. Western State Bank
, 2008 ND 104, ¶ 19, 750 N.W.2d 412.  Trusts are generally included as marital property subject to equitable distribution by the district court.  
Paulson v. Paulson
, 2010 ND 100, ¶ 19, 783 N.W.2d 262.

[¶27] The Jacqueline M. Smith Revocable Trust provided that, upon the death of Jacqueline Smith, Terry Smith would receive the trust’s farmland, one-half of the mineral interests, and forty-five percent of the trust residue.  Jacqueline Smith amended the trust in 2012 to eliminate Terry Smith’s interest in the trust during the divorce.  Under amended Article Two of the trust, “[a]ll gifts and provisions for my son, Terry A. Smith, shall be deemed to have lapsed so long as the divorce proceedings between him and Cindy Innis Smith are pending.”  The amendment provided that Smith’s interest in the trust lapsed to his daughters during the divorce.  Amended Article Two terminated and became void “[a]t such time as the divorce proceedings between Cindy Innis Smith and Terry A. Smith are completely adjudicated and the statute of limitations for any and all appeal periods has run.”

[¶28] Amended Article Three of the trust dealt with trust administration at Jacqueline Smith’s death during the divorce.  The amendment provided that at Jacqueline Smith’s death, “any gift or distribution to Terry A. Smith . . . shall lapse, and shall pass instead to [Smith’s daughters], in equal shares.”  Amended Article Three also terminated and became void at the conclusion of the divorce proceedings.

[¶29] Jacqueline Smith died in March 2013 before the divorce trial.  The district court held Smith’s interest in the trust would not be included in the marital estate because Jacqueline Smith died during the divorce:

The Court finds the position of Terry persuasive with regards to the Trust not being included as marital property.  The clear language of the July 30, 2012 Amendment to the Trust indicated that if Terry were involved in divorce proceedings with Cindie, entitlement would be eliminated if Jacqueline died while any divorce proceedings were ongoing, and Terry’s 50 percent share lapsed to his daughters.  As of Jacqueline’s death on March 31, 2013, Terry’s daughters attained these vested rights on that date.  In addition, no evidence was received that Jacqueline was incompetent when she created the Amendment to the Trust.

While the Court notes the argument of lapse of Terry’s interest in the Trust during the divorce proceedings, the Court looks specifically to Article Three Trust Administration Upon My Death.  That indicates that upon Jacqueline’s death, any gift or distribution to Terry Smith shall lapse, and shall pass instead to [Smith’s daughters] in equal shares.  As Jacqueline died before the divorce proceedings went to trial and were concluded, the Court finds as a matter of law that Article Three controls.

[¶30] Innis-Smith argues that Smith had a vested interest in the trust at Jacqueline Smith’s death, and the divorce only delayed Smith’s receipt of the interest.  Innis-

Smith contends that because the trust amendments terminate and become void when the divorce action ends, Smith will receive his interest from his daughters at the conclusion of the divorce and appeals.  This argument is without merit.  The plain language of amended Article Three provided that all trust distributions to Smith lapsed to his daughters at Jacqueline Smith’s death.  Because Jacqueline Smith died during the divorce, Smith’s interest became vested in his daughters with no limitations on their ownership.  Nothing in the amendments to the trust requires Smith’s daughters to relinquish their ownership of the property to Smith after the divorce.  We conclude the district court correctly interpreted the trust and did not err in deciding Smith’s interest in the trust terminated.

VI

[¶31] We have considered the parties’ remaining arguments and conclude they are either unnecessary to our decision or without merit.  The amended judgment is affirmed in part, reversed in part, and remanded for further proceedings to reconsider the values of the water depot and mineral interests.

[¶32] Jerod E. Tufte

Zane Anderson, S.J.

Gerald W. VandeWalle, C.J.

[¶33] The Honorable Zane Anderson, Surrogate Judge, sitting in place of Crothers, J., disqualified.

Jensen, Justice, concurring in part and dissenting in part.

[¶34] I concur in the result reached by the majority opinion to affirm the district court’s property distribution, determination of spousal support, and exclusion of trust assets from the property division.  I write separately to dissent from that portion of the majority opinion which concludes the district court abused its discretion in denying the motion to reopen the proceedings to consider evidence of changes in the value of the parties’ marital property subsequent to the trial.  I would affirm the district court’s denial of the motion to reopen the case to receive additional evidence on the valuation of the parties’ assets subsequent to the trial and affirm, in its entirety, the district court’s judgment.

[¶35] The majority opinion provides an accurate description of the parties’ marriage and the proceedings in the district court.  In summary, a trial on the issues of property distribution and spousal support was held in April 2013.  In May 2015, more than two years after the trial, the district court issued its memorandum opinion.  The district court valued the net marital estate at $7,937,804.55, including a water depot that at the time of trial the parties agreed had a value of $4,335,000 and mineral interests the district court determined had a value of $1,113,950.  The court awarded Smith $7,400,607.55 in property and Innis-Smith $558,206.50.  The district court equalized the property distribution through a $3,431,705 cash payment from Smith to Innis-Smith.  The court also awarded Innis-Smith $4,000 per month in permanent spousal support.

[¶36] After the district court issued its May 2015 decision, Smith requested the district court reopen the record to allow him to present additional evidence relating to the change in the value of the water depot and mineral interests subsequent to the trial.  Smith argued the values of the water depot and mineral interests dramatically decreased between the April 2013 trial and May 2015 decision.  Smith attached an affidavit and exhibits purporting to show the value of the water depot decreased from $4,335,000 to $1,220,215, and the value of the mineral interests decreased from $1,113,950 to $598,637.

[¶37] The district court denied Smith’s motion to reopen the record.  Smith argues the district court abused its discretion in the denial of his motion to reopen the record.

[¶38] District courts have broad discretion in allowing or refusing to allow a party, after having rested, to reopen the record to introduce additional evidence
.  Vandal v. Leno
, 2014 ND 45, ¶ 26, 843 N.W.2d 313.  A district court’s decision on a motion to reopen will not be disturbed on appeal unless the district court abused its discretion.  
Id
.  A district court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned decision.  
Estate of Johnson
, 2017 ND 162, ¶ 18, 897 N.W.2d 921.

[¶39] The district court declined to reopen the record to hear additional evidence.  After a hearing on Smith’s motion, the district court provided the following explanation as to why Smith’s motion was denied:

Revaluation of the East Fork Water Depot and mineral interests is inappropriate.  Marital property should be valued as of the date of trial, rather than the date of distribution because otherwise parties would be free to file additional evidence, not subject to cross-examination, whenever they believed a marital asset had changed in value.  This procedure would promote never-ending trial by affidavit.  This is not an extraordinary case involving a substantial, unanticipated change in valuation of an asset that occurred after trial but before distribution.  The marital assets Terry seeks to revalue are assets which values experience ebbs and flows depending on any number of factors, including the economy.  The value of these assets is constantly fluctuating, and the change will extend beyond the distribution of these assets.  
Compare
 
Grinaker v. Grinaker
, 553 N.W.2d 204, 209 (N.D. 1996) (redistribution in case of a $1 lottery ticket which appreciated into a million-dollar jackpot in a single, one-time event that is straightforward and measurable in one instance).

Terry and Cindie stipulated and agreed upon the values for both the East Fork Water Depot and the mineral interests at the time of trial.  This Court holds Terry to his stipulation.

[¶40] In addition to the 
Grinaker
 decision cited by the district court, this Court has repeatedly confirmed that marital property is ordinarily valued at the time of trial.  
See, e.g.
, 
Langwald v. Langwald
, 2016 ND 81, ¶ 10, 878 N.W.2d 71; 
Weigel v. Weigel
, 2015 ND 270, ¶ 9, 871 N.W.2d 810; 
Conzemius v. Conzemius
, 2014 ND 5, ¶ 27, 841 N.W.2d 716.  This Court has been consistent in its determination that “[c]ommon sense dictates that marital property be valued as of the date of trial, rather than the date of distribution.  The trial court hears the evidence on value at trial, and the evidence will ordinarily give a current value for the property.”  
Grinaker
, 553 N.W.2d at 208-09.

[¶41] The majority opinion correctly cites to 
Grinaker
 and this Court’s statement “that relief may be justified in extraordinary cases when a substantial, unanticipated change in valuation of an asset occurs after trial but before distribution.”  553 N.W.2d at 209.  Our consideration of whether or not this is an extraordinary case requiring departure from the general rule that the valuation of the assets must be determined as of the time of divorce trial is governed by the abuse of discretion standard of review:  whether the district court abused its discretion by acting in an arbitrary, unconscionable, or unreasonable manner, by misinterpreting or misapplying the law, or if its decision was not the product of a rational mental process leading to a reasoned decision.  
Id.
 at 207.

[¶42] The district court did not act in an arbitrary, unconscionable, or unreasonable manner.  To the contrary, the district court correctly identified the issue:  the value of some of the marital assets changed between the trial and the date of distribution.  After identifying the issue, the district court provided the following summary of why departure from valuation of the assets at the time of trial was not warranted:

This is not an extraordinary case involving a substantial, unanticipated change in valuation of an asset that occurred after trial but before distribution.  The marital assets Terry seeks to revalue are assets which values experience ebbs and flows depending on any number of factors, including the economy.  The value of these assets is constantly fluctuating, and the change will extend beyond the distribution of these assets.

It is also clear from the district court’s summary that the district court did not misinterpret or misapply the law, and the district court’s decision was the product of a rational mental process which led to a reasoned decision.  The district court did not abuse its discretion.

[¶43] The majority opinion finds extraordinary circumstances from the normal ebb and flow of the economy that, in this case, have adversely impacted the value of some of the water depot and mineral interests.  One danger of finding extraordinary circumstances in the normal ebb and flow of the economy is that those risks are already inherent within most valuations.  The water depot’s value and the value of the mineral interests are closely tied to oil production in western North Dakota.  The oil industry is a volatile industry.  It is very likely that the value of the water depot and the mineral interests at the time of trial included a discount for substantial market risk because of the close association of those assets to the oil industry.  Smith knew those risks and still requested allocation of the water depot to him in the district court’s property distribution.

[¶44] Opening the door to a finding of extraordinary circumstances resulting from the normal ebb and flow of the economy has the potential to eviscerate our rule that assets are generally valued as of the date of trial.  The parties in divorce proceedings will need to continue to do post-trial discovery to monitor changes in the value of assets.  Parties will also be justified in requesting new valuations for assets as of the date of distribution to support motions seeking the reopening of the case.

[¶45] The district court’s two-year delay in issuing a decision is alarming.  As the majority opinion correctly recognizes, the two-year delay in issuing a decision far exceeds the time standard that has been set for the district court to issue a decision following a trial in a family law proceeding.  Although the district court failed to timely issue an opinion, the district court’s delay did not cause the change in the water depot’s value or the value of the mineral interests.  The water depot’s value and the value of the mineral interests changed in sync with the normal ebb and flow of the oil economy.  Ebbs and flows in the economy are not extraordinary circumstances justifying departure from our general rule that assets are to be valued at the time of trial.

[¶46] Although not expressed in the majority opinion, Smith asserted during oral argument that it was the district court’s delay that caused the harm.  He argued that had the district court entered a judgment and the assets been allocated, he could have taken steps to limit the loss in the value of the assets.  Smith is mistaken that he had no ability to preserve the value of the marital estate.  Every summons in a divorce action is required to comply with N.D.R.Ct. 8.4.  Rule 8.4(a)(1) provides as follows:

Neither spouse may dispose of, sell, encumber, or otherwise dissipate any of the parties’ assets, except:

(A) For necessities of life or for the necessary generation of income or 
preservation of assets
; or

(B) For retaining counsel to carry on or to contest the proceeding[.]

If a spouse disposes of, sells, encumbers, or otherwise dissipates assets during the interim period, that spouse shall provide to the other spouse an accounting within 30 days.

(Emphasis added).  Smith was not prevented from taking action to preserve assets of the marital estate.

[¶47] The majority opinion’s concern is understandable in light of the significant decline in the value of the water depot and the mineral interests.  However, Smith is not without recourse.  This Court has previously affirmed a district court decision relieving a litigant from a divorce judgment that was determined to be unjust pursuant to N.D.R.Civ.P. 60(b).  
Kopp v. Kopp
, 2001 ND 41, ¶ 12, 622 N.W.2d 726.  In 
Kopp
, one of the parties was discharged from significant joint marital debt through bankruptcy proceedings following the entry of a final judgment.  
Id.
 at ¶ 3.  The opposing party filed a motion pursuant to Rule 60(b) seeking relief from the final judgment.  
Id.
  The district court granted the motion noting that the discharge of debt created a “terrible disparity between the financial situations of the parties.”  
Id
. at ¶ 11.

[¶48] A motion under Rule 60(b) would not disrupt our general rule that assets are to be valued as of the date of trial.  Rule 60(b) is the proper vehicle under which the district court should be asked to determine whether the judgment has been rendered unjust by the change in asset values subsequent to trial.  Rule 59(j), N.D.R.Civ.P., is not an appropriate vehicle for considering events occurring after trial.  
Porter v. Porter
, 274 N.W.2d 235, 242 (N.D. 1979) (holding events occurring after trial are not grounds for a new trial); 
Piper v. Piper
, 239 N.W.2d 1, 4 (N.D. 1976) (holding evidence that did not exist at the time of trial is not newly discovered evidence).  The district court was not asked to review this case under the framework of Rule 60(b), which requires a different legal analysis than Smith’s motion under N.D.R.Civ.P. 59(j).  The district court should not be deprived of the opportunity to review this case through the appropriate procedure.

[¶49] Our review of the district court’s decision to deny the motion to reopen the record is governed by the abuse of discretion standard of review.  The district court did not abuse its discretion in denying the motion to reopen the record based upon a change in martial asset values attributable to the normal ebb and flow of the economy between the date of trial and distribution.  I would affirm the district court judgment in its entirety.

[¶50] Jon J. Jensen

Lisa Fair McEvers