20200135 & 20200136

FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
NOVEMBER 19, 2020
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 236

In the Matter of the Estate of Ralph H. Lindvig, deceased

| | |
|---|---|
| Milton Lindvig, Personally and as Successor Personal Representative, | Petitioner and Appellant |
| v. | |
| Patricia Jellum, Personal Representative of the Estate of Dorothy Jo Lindvig, | Respondent and Appellee |
| and | |
| Gail Howard and Bruce Lindvig, | Respondents and Appellants |

### No. 20200135

In the Matter of the Estate of Dorothy Jo Lindvig, deceased

| | |
|---|---|
| Patricia Jellum, Personal Representative of the Estate of Dorothy Jo Lindvig, | Petitioner and Appellee |
| v. | |
| Edward Hilmer, | Respondent |
| and | |
| Milton Lindvig, Bruce Lindvig, and Gail Howard, | Claimants and Appellants |

### No. 20200136

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Benjamen J. Johnson, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Monte L. Rogneby, Bismarck, ND, for petitioner and appellant and claimant Milton Lindvig, and respondents and appellants and claimants Bruce Lindvig and Gail Howard; submitted on brief.

Charles L. Neff, Williston, ND, for respondent and appellee and petitioner Patricia Jellum; submitted on brief.

## Estate of Lindvig
### Nos. 20200135 and 20200136

**Crothers, Justice.**

[¶1]   Gail Howard, Bruce Lindvig, and Milton Lindvig, personally and as Successor Personal Representative to the Estate of Ralph H. Lindvig, (together "the estate of Ralph Lindvig") appeal from a judgment entered in consolidated formal probate proceedings.  We affirm.

I

[¶2]   Ralph and Dorothy Lindvig, now deceased, were married for 25 years. They had no children.  Dorothy Lindvig suffered from childhood polio and required support and special accommodations for her lack of mobility.  Ralph Lindvig was a farmer.  He received the majority of the land he farmed from his parents, and he owned it jointly with his two brothers.  Ralph Lindvig also solely owned land he purchased prior to the couple's marriage, which the parties refer to as the Wattam land.  In 1982, roughly two years after the couple married, Ralph Lindvig executed a will.  It left Dorothy Lindvig a life estate in all of his land, and after her death equally to his brothers or to their descendants.

[¶3]   In 2006, Ralph Lindvig fell and broke his hip.  He never fully recovered. He spent the remainder of his days in care facilities until his death in 2008.  In June of 2006, Ralph Lindvig executed a durable power of attorney naming Dorothy Lindvig as his agent.  The power of attorney contained a general grant of power and enumerated specific powers, including authority to transfer real estate, as well as two sections titled "estate planning" and "advanced estate planning."  The former section provides authority to "make gifts for estate planning purposes, including gifts to my attorney-in-fact."  The latter section provides authority to make gifts "after obtaining approval of a court of competent jurisdiction" and notes the intent of the section is to give notice of "my desire to minimize the obligation of my estate to pay taxes and maximize the value of my estate for the benefit of the beneficiaries of my estate."

[¶4]   In 2007, due to financial concerns related to paying for Ralph Lindvig's care, Dorothy Lindvig, acting as Ralph Lindvig's attorney in fact, sold portions of Ralph Lindvig's interests in the land he received from his parents to Milton Lindvig, Ralph Lindvig's brother.  The transfers were made by two warranty deeds, each of which severed the minerals and reserved them to Ralph and Dorothy Lindvig as joint tenants.  In May of 2007, Dorothy Lindvig, again acting as Ralph Lindvig's attorney in fact, conveyed the Wattam land to herself by warranty deed.

[¶5] When Ralph Lindvig died Dorothy Lindvig was the personal representative of his estate.  After her death in 2009, she was replaced by Milton Lindvig.  Dorothy Lindvig died intestate, survived by a brother and her sister, Patricia Jellum, who is the personal representative of Dorothy Lindvig's estate.  The estate of Ralph Lindvig filed a petition in Dorothy Lindvig's probate proceedings to set aside the intestate distribution of the minerals she severed and the Wattam land she conveyed to herself.  The estate of Ralph Lindvig argued the transfers were beyond Dorothy Lindvig's authority because they diminished the size of his estate and were not approved by a court, all in contravention of the power of attorney's gifting provisions. The parties stipulated to consolidating the two probates as formal administrations.

[¶6]   On June 6, 2011, the district court held an evidentiary hearing on the petition.  At the conclusion of the hearing the court made rulings from the bench.  The court found the transfers were within Dorothy Lindvig's authority under the power of attorney and were valid and enforceable.  On June 10, 2013, the court entered a written order with findings and conclusions.  Over the next several years the parties litigated other issues related to the estate.  Judgment was entered in each case on March 30, 2020.

II

[¶7]   In an appeal from a judgment entered after a bench trial this Court reviews the district court's legal conclusions de novo and its factual findings under the clearly erroneous standard.  *Stuber v. Engel*, 2017 ND 198, ¶ 10, 900

2

N.W.2d 230. "A factual finding is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence supporting it, or if, although there is some evidence to support it, on the entire record, we are left with a definite and firm conviction a mistake has been made." *Innis-Smith v. Smith*, 2018 ND 34, ¶ 7, 905 N.W.2d 914.

A

[¶8]   The estate of Ralph Lindvig argues the transfers exceed the authority he granted Dorothy Lindvig in the power of attorney.   His estate asserts the transfers were gifts and, under the power of attorney, the authority to gift is limited to maximizing the value of Ralph Lindvig's estate and minimizing estate tax liability.   His estate also asserts the power of attorney required court approval of gifts.   Because the transfers diminished the estate and were not approved by a court, the estate of Ralph Lindvig argues the district court erred when it held the transfers were valid.

[¶9]   The estate of Dorothy Lindvig contends the transfers were made for consideration and thus were not gifts. Her estate asserts marriage is an economic partnership, and argues there was consideration in the form of marital contributions. Her estate claims North Dakota's public policy recognizes this type of consideration as evidenced by the spousal elective share statute. *See* N.D.C.C. § 35.1-05-01.

[¶10] A determination whether the transfers were gifts is necessary because the power of attorney contained a provision for gifts and a different provision for real estate transactions made for consideration.   Section 47-10-23.1, N.D.C.C., provides a conclusive presumption that transfers of real estate between spouses are not gifts:

> "A nontestamentary transfer of real property between spouses shall be presumed to be for a consideration, and not a gift, unless otherwise stated in writing at the time of transfer. This presumption is conclusive."

[¶11] Although neither the parties nor the district court identified this presumption, we retain the power to apply the correct law when an issue is properly before us. *D.G.L. Trading Corp. v. Reis*, 2007 ND 88, ¶ 7, 732 N.W.2d 393 (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)). In addition to the statutory presumption that transfers of real estate between spouses are made for consideration, spouses "have a mutual duty to support each other out of their individual property and labor." N.D.C.C. § 14-07-03.

[¶12] The district court did not provide a clear explanation whether it concluded the transfers were gifts. The court found the power of attorney contained "a deliberate and special provision allowing Dorothy Jo Lindvig, in her discretion, to make gifts of property to herself." Yet the order concludes Dorothy Lindvig "held a marital interest in and to the land assets titled in the name of her husband Ralph Lindvig" and the transfers "reflected Dorothy Jo Lindvig's interest in their joint marital estate."

[¶13] Based on the undisputed facts in this case, the transfers were not gifts. There is no assertion or evidence of the existence of a writing made at the time of either transfer stating it was a gift. Thus, the conclusive presumption in N.D.C.C. § 47-10-23.1 applies. In addition, a transfer made to satisfy a legal obligation to support a spouse or child is considered involuntary and does not constitute a gift. *See* Restatement (Third) of Property (Wills & Donative Transfers) § 6.1(d) (Am. Law Inst. 2003). It is undisputed that Dorothy Lindvig suffered from a chronic illness and she required support. Ralph Lindvig had a legal obligation to support her out of his individual property. *See* N.D.C.C. § 14-07-03. Under these circumstances, as a matter of law the transfers do not constitute gifts.

[¶14] Ralph Lindvig's estate also asserts Dorothy Lindvig exceeded the authority granted to her by the power of attorney. The plain language of a power of attorney governs "except to the extent the fiduciary relationship requires a special rule." *Alerus Fin., N.A. v. W. State Bank*, 2008 ND 104, ¶ 20, 750 N.W.2d 412; *see also Burlington N. and Santa Fe Ry. Co. v. Burlington Res. Oil & Gas Co.*, 1999 ND 39, ¶ 16, 590 N.W.2d 433. The power of attorney

4

granted Dorothy Lindvig the general power "to do everything necessary in exercising any of the powers herein granted as fully as I might or could do if personally present." It also specifically provided her the power to "sell and convey real or personal property . . . on such terms and conditions as my agent shall deem proper." Thus, the transfer was within the authority granted to Dorothy Lindvig under plain language of the power of attorney.

[¶15] An agent acting under the authority of a power of attorney still must abide by his or her fiduciary duties to the principal. *Burlington N.*, 1999 ND 39, ¶ 16; *see also Alerus Fin.*, 2008 ND 104, ¶ 19. "[E]ven if the principal consents to self-dealing by the agent, the agent must fully and completely disclose all relevant facts to the principal unless the agreement provides otherwise." *Burlington N.*, at ¶ 21.

[¶16] The attorney who prepared the warranty deeds in this case testified Dorothy Lindvig initiated contact with him "and wanted me to visit with Ralph about it—what I could do for him to help the two of them cope with the hardships that were going on in their life with the physical problems and the financial concerns." The attorney testified he visited with Ralph Lindvig on two occasions, Ralph Lindvig was aware there would likely be a shortage of funds due to the couple's medical needs, and Ralph Lindvig understood Dorothy Lindvig could make transfers to herself under the power of attorney. When asked whether the transfer was "contemplated and authorized by Ralph Lindvig," he testified "I think everything that was done was in accordance with that type of a plan."

[¶17] The district court made the following findings: "After twenty-five years in a loving marriage" the transfer was a "normal, if not expected" deviation from Ralph Lindvig's will, and "even more understandable where you consider the increased needs of a spouse in the advanced stages of disease induced disability." The district court concluded Ralph Lindvig "did knowingly grant" Dorothy Lindvig the power to make transfers to herself and such power "was a reasonable accommodation for Ralph Lindvig to provide for his special needs wife and marriage of over 25 years." Given these findings, which are supported

5

by the evidence, Dorothy Lindvig did not breach her fiduciary duties by engaging in improper self-dealing.

[¶18] Because the transfers in this case were not gifts, the power of attorney's gifting provisions do not apply. Dorothy Lindvig had authority to make the transfers under the power of attorney's real estate transfer provision, and based on the district court's findings, she did not breach a fiduciary duty. Although our reasoning is different than the district court's reasoning, we affirm the result of its decision. *See Sanders v. Gravel Prods., Inc.*, 2008 ND 161, ¶ 9, 755 N.W.2d 826 ("we will not set aside a correct result merely because the district court's reasoning is incorrect if the result is the same under the correct law and reasoning").

B

[¶19] The estate of Ralph Lindvig argues that even if the power of attorney authorized Dorothy Lindvig to make the transfers, the district court erred because it did not apply a presumption of undue influence against her.

[¶20] The issue of whether a presumption of undue influence applies to an individual acting as an attorney in fact for his or her spouse was not raised before the district court. The estate of Ralph Lindvig specifically advised the court that based on its theory of the case—that Dorothy Lindvig exceeded her authority as Ralph Lindvig's attorney in fact—the doctrine of undue influence was "not relevant" and "has no bearing on this matter." His estate now takes a contradictory position on appeal. Because the issue was not raised before the district court and the estate of Ralph Lindvig's positions are wholly inconsistent, we will not decide it. *See Schiele v. Schiele*, 2015 ND 169, ¶ 16, 865 N.W.2d 433 ("If a party fails to properly raise an issue or argument before the trial court, the party is precluded from raising that issue or argument on appeal."). *See also Krenz v. XTO Energy, Inc.*, 2017 ND 19, ¶ 33, 890 N.W.2d 222 ("Judicial estoppel prohibits a party from assuming inconsistent or contradictory positions during the course of litigation.").

## III

[¶21] We affirm the judgment entered in these consolidated probate proceedings.

[¶22] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte